**REVENUE CABINET Commonwealth of Kentucky, Appellant,**

v.

**MOORS RESORT, INC., Appellee.**

Court of Appeals of Kentucky.

Aug. 24, 1984.

Rehearing Denied Sept. 21, 1984.

Arnold C. Jones, Peggy Guier, Revenue Cabinet, Frankfort, for appellant.

Earl T. Osborne, Osborne & Harris, Paducah, for appellee.

Before HOWARD, MILLER and REYNOLDS, JJ.

MILLER, Judge.

This appeal involves a controversy over sales tax assessed by appellant, Revenue Cabinet, Commonwealth of Kentucky (cabinet), against appellee, Moors Resort, Inc. (taxpayer). KRS Chapter 139. Previously, this matter was dismissed by this court as being a premature appeal from the Marshall Circuit Court order. CR 54. The Supreme Court granted discretionary review and reversed, remanding to this court for a decision "on the merits," holding the Marshall Circuit Court order, from which this appeal was taken, to be a final appealable order. CR 54.01. The decision is reported as *Revenue Cabinet, Commonwealth of Kentucky v. Moors Resort, Inc.*, Ky., 662 S.W.2d 219 (1983).

Taxpayer's primary business involves the operation of a boat dock, marina, restaurant and rental cottages on Kentucky Lake in Marshall County, Kentucky. The dispute with the cabinet surrounds taxpayer's failure to collect and remit "sales tax" upon ten transactions involving the sale of houseboat-type crafts during the audit period of 1972–1976. The tax liability alleged by the cabinet, after considerable adjustment for matters not herein relevant, resulted in an August 4, 1978, assessment of over $14,000.00, exclusive of penalty and interest, which is the amount in controversy.

Taxpayer protested the assessment before the Kentucky Board of Tax Appeals (board), (KRS 131.310), maintaining that it was not subject to the sales tax imposed, for reason that its involvement in the ten transactions was not in the capacity of a "retailer," as defined in KRS 139.110. It is, of course, only the gross receipts (KRS 139.050) from a retail sale (KRS 139.100) by a retailer (KRS 139.110) that are subject to sales tax under KRS 139.200. The board upheld the assessment. On taxpayer's appeal to the Marshall Circuit Court, the decision of the board was reversed. The circuit court held that the taxpayer's involvement in the ten transactions concerning the houseboats was not that of a retail seller, but was only that of a "commission agent" and, therefore, not subject to imposition of sales tax under Chapter 139. The cabinet brings this appeal to our court for review of the decisions of the Kentucky Board of Tax Appeals and the Marshall Circuit Court. We affirm the decision of the circuit court.

At the outset, we observe that our sales tax is one upon gross receipts of a retailer. The "incidence" is upon the retailer for the privilege of making a retail

sale within this commonwealth (KRS 139.-200), although it may be passed on to the consumer (KRS 139.210). For the purpose of collecting and remitting the tax, the retailer is considered to be the taxpayer. *See Marcum v. City of Louisville Municipal Housing Commission*, Ky., 374 S.W.2d 865 (1963). The statute creates a presumption that all "gross receipts" from retail sales are subject to the tax, and the "burden" of proving that a sale of tangible personal property is not a retail sale is upon the person making the sale. KRS 139.260. Apparently, the only method of shifting this burden is for the seller to obtain, "in good faith," a certificate of intention to resell, as provided in KRS 139.-270. *See Department of Revenue v. Warren Chemical & Janitor Supply Company*, Ky.App., 562 S.W.2d 644 (1977).

With the foregoing being the status of the law, as we see it, and there being no certificate to resell involved, we must conclude that the burden of proving that the gross receipts from the transactions involved in this case were not taxable rested upon taxpayer, Moors Resort, Inc. Taxpayer attempted to fulfill this burden by offering the testimony of interested parties that the transactions as to each of the sales transpired between the manufacturers and the ultimate customers, and that taxpayer at no time held title to the crafts. Further, taxpayer offered evidence that in most, if not all, cases, the manufacturers and purchasers were in other states, and the boats were delivered directly from the manufacturers to the customers, there being no delivery in this jurisdiction. It was shown that each boat was "customized," according to the desire of the particular purchaser. Taxpayer maintained no stock or inventory, no showroom, literature, sales office or dealer's license, and its principal business was that of operating a boat dock, marina, restaurant and cottage rental. Taxpayer contended that its chief officer, Jerry Moore, being the operator of a popular marina in the area, came into contact with many would-be boat purchasers and simply arranged for purchases directly from manufacturers, with his reward being a "commission." In essence, taxpayer contended he was simply in a good position to bring buyers and sellers together. Affidavits of various purchasers were offered by taxpayer to support the contention that Moore was simply a commission agent or broker. With a single exception, the transactions were invoiced from the manufacturer to the customer. It appears that a boat was invoiced directly to taxpayer in one instance only.

Taxpayer takes the position in its brief, though unsupported by evidence, that the practice of selling houseboats on a commission basis is commonplace because of the large amount of money involved and the fact that the boats are generally outfitted pursuant to the customer's order. The business is further likened to that of selling horses (blood stock) and airplanes. This, too, is unsupported in the record, but there is ample evidence that houseboats are very costly, indeed. They are not items readily purchased by the public in general.

The cabinet's argument throughout this matter is based upon an analysis of taxpayer's "bank deposits." Payments for the crafts were made to taxpayer and the sums were deposited in taxpayer's account with the notation "boat sales," or words to that effect. Taxpayer later remitted certain sums to the manufacturer by check. Thus, the bank account reflected the total deposits and withdrawals relative to the transactions. Neither party provided evidence from the manufacturers (vendors) as to the nature of the sales, nor whether sales tax had, in fact, been paid in other jurisdictions. The cabinet maintains, and the Kentucky Board of Tax Appeals held, that the evidence from the bank deposits and disbursements was the best and conclusive evidence that taxpayer was a retailer of boats, and that such evidence outweighed testimony offered by taxpayer. Taxpayer countered by arguing that the collection and disbursement of the proceeds from the boat transactions through its bank account was only a convenient way of being assured of collecting its commission, in a business involving large sums of money

and in which the financial stability of some manufacturers was questionable.

Cabinet insists that the bank records, coupled with the presumption under KRS 139.260, are sufficient to sustain the decision of the board. Cabinet further suggests that taxpayer should suffer prejudice for failure to keep more complete records as required under KRS 139.720. In this latter regard, we note that cabinet's auditor demonstrated abundant fairness in permitting taxpayer to "reconstruct" what appears to have been an inordinately poor set of books.

Be that as it may, the role of judicial review of the board's decision is that of determining the propriety of "questions of law." KRS 131.370. Whether a decision of the board is unreasonable, arbitrary and capricious, for reason it is not based upon substantial evidence, is one of law. *See Board of Education v. Chattin,* Ky., 376 S.W.2d 693 (1964).

Upon reviewing the entire record, we agree with the circuit court that taxpayer met and sustained its burden under the law. Upon the evidence adduced by both parties, we conclude that the decision of the Kentucky Board of Tax Appeals was unreasonable, arbitrary and capricious. The evidence was such that, in our view, a finding in favor of taxpayer was compelled.

It may be, as argued by cabinet, that taxpayer's banking records were the best evidence, but it does not necessarily follow that the best evidence is conclusive in reaching a decision upon the record as a whole. In this regard, we perceive the cabinet's argument to be that the bank records were simply a "better quality" of evidence, therefore deserving more weight when compared to the testimony of taxpayer and his witnesses. Such may be true, but nevertheless, the testimony of a taxpayer, like all evidence, must be evaluated and afforded just and proper weight. Further, we are of the opinion that bank accounts are not always conclusive as to the true nature of a business transaction. In the modern world of commerce, bank accounts are frequently used as a convenient and practical method of transferring funds for divers reasons, and, thus, may not always be relied upon in arriving at gross receipts from sales within the purview of Chapter 139.

For the foregoing reasons, the judgment of the Marshall Circuit Court is affirmed.

All concur.