**REVENUE CABINET, COM-
MONWEALTH of Ken-
tucky, Appellant,**

v.

**JOY TECHNOLOGIES, INC., Appellee.**

**No. 91–CA–1035–MR.**

Court of Appeals of Kentucky.

May 1, 1992.

Discretionary Review Denied by Supreme Court Nov. 11, 1992.

Celia M. Dunlap, Div. of Legal Services, Revenue Cabinet, Frankfort, for appellant.

Tom Brown, Mark Sommer, Louisville, for appellee.

Before DYCHE, MILLER and SCHRODER, JJ.

MILLER, Judge.

Revenue Cabinet, Commonwealth of Kentucky (Cabinet), brings this appeal from a judgment of the Hopkins Circuit Court entered April 23, 1991, which (by incorporation of its order of April 9, 1991) reversed a decision of the Kentucky Board of Tax Appeals [1] (Board) dated January 22, 1990. We affirm.

The facts of the case are these: Joy Technologies (Joy) is in the business of manufacturing, marketing, and servicing coal mining equipment. In conjunction with those activities, Joy conducts a "Component Exchange Program" (CEP) which is available to any customer who has purchased Joy mining equipment. The apparent purpose of the CEP is to enable the owners of huge and expensive coal mining machinery to participate in a service program which is designed to minimize "down time" in the mining industry. Under the CEP, an owner of disabled or inoperative Joy mining equipment may exchange an inoperative component for a repaired component from Joy's CEP inventory. Only Joy components are exchanged. The process is initiated when a customer contacts one of three Joy CEP service centers.[2] Joy either personally delivers or ships a replacement component and retains the inoperative component. Depending upon the customer's needs, Joy personnel may or may not remove and replace the inoperative component. After Joy completes the repair of the inoperative component, it is added to Joy's CEP inventory for future use (exchange) by customers. Joy then invoices the owner of the inoperative component for the cost of repair. On the invoice, parts and labor are separately itemized. Joy charges sales tax on the parts, but does not charge sales tax on the labor. The essential elements of the transaction appear to be the labor and materials involved in repairing the inoperative (replaced) component, there being no charge for the exchanged (replacement) piece of equipment.

This controversy arose when the Cabinet issued its final ruling letter of October 27, 1988, for outstanding sales and use tax assessments against Joy totalling (as amended) $240,586.65 (plus applicable interest) for a period beginning April 1, 1983, and ending May 31, 1986.[3] Kentucky Revised Statute (KRS) 131.110(4). The Cabinet felt Joy had erroneously deducted the cost of labor associated with its CEP from gross receipts when calculating its tax liability.[4]

Joy timely petitioned the Board for review of the Cabinet's ruling. KRS 131.340; 802 Kentucky Administrative Regulations (KAR) 1:010. The Board upheld the Cabinet's final ruling letter by concluding that KRS 139.130(1)(b)[5] does not permit Joy to deduct the cost of labor prior to charging

---

1. The Board of Tax Appeals is created under Kentucky Revised Statutes (KRS) Chapter 131.-310.

2. The centers are located in Bluefield, West Virginia, Mount Vernon, Illinois, and Duffield, Virginia.

3. Our sales and use tax is codified in KRS Chapter 139.

4. At this same time, Joy also conducted a "Repair and Return Program" (RRP) in which it also invoiced customers for separately itemized labor without charging sales tax. The salient difference between the RRP and the CEP is that under the former, the customer receives the same component after repair. Under the latter, the customer receives a comparable replacement component during (and after) the repair. The Cabinet did not object to the invoicing procedure for the RRP, although it was identical to the invoicing procedure for the CEP.

5. KRS 139.130(1)(b) provides: "'Sales price.'— (1) 'Sales price' means the total amount for which *tangible personal property* is sold, valued in money, whether paid in money or otherwise, without any deduction on account of any of the following:

. . . . .

(b) The cost of materials used, labor or service cost, interest charged, losses, or any other expenses;" (emphasis added).

sales tax on the total costs associated with the repair of inoperative components under the CEP. In its decision, the Board stated that 103 KAR 27:150(4) directly applies to Joy's CEP transactions because the CEP constitutes a transfer of tangible property under KRS 139.160.

Joy then appealed the Board's order to the Hopkins Circuit Court. KRS 131.370. The circuit court determined that the case presented a reviewable issue on the question of law as to whether the CEP was a repair program (in which case labor would not be taxable) as defined in 103 KAR 27:150(1), or was a repair involving commingling of property in an integral transaction (wherein labor would be taxable) under 103 KAR 27:150(4). The circuit court found in favor of Joy, concluding that the CEP was a repair service governed by the provisions of 103 KAR 27:150(1) and, therefore, labor was not taxable. In reversing the Board's order, the circuit court opined that the Board had acted erroneously in applying subsection (4) of 103 KAR 27:150 instead of subsection (1).

The issues advanced by the Cabinet on appeal are (1) whether the Hopkins Circuit Court exceeded its statutory scope of review pursuant to KRS 131.370 when it reversed the Board, and (2) if the Hopkins Circuit Court did not exceed its scope of review, whether it erroneously applied 103 KAR 27:150(1) by mischaracterizing the labor involved in Joy's CEP as a nontaxable repair service rather than repair involving commingling of property in an integral transaction, as contemplated by 103 KAR 27:150(4). Without being limited to the exact reasoning of the trial court, we think it acted correctly in excluding taxability of the labor charges in question.

 Initially, we make some observations about our role in examining the order of the Board. We perceive that role as reviewing the propriety of "questions of law," that is, whether the order is in conformity with the law. KRS 131.370; *Revenue Cabinet v. Moors Resort, Inc.*, Ky. App., 675 S.W.2d 859 (1984). If a board

has misconstrued the legal effect of the facts, courts are not bound to accept the legal conclusions of that administrative body. *Epsilon Trading Co., Inc. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937 (1989). From the record, we believe the circuit court properly reviewed this matter within the statutory parameters delineated in *Moors Resort, Inc.*, and *Epsilon Trading Co., Inc.* The court deduced that the Board's differentiation in tax treatment between the Repair and Return Program (RRP) (see footnote 2) and the CEP was "illogical." The circuit court concluded that the CEP is substantially the same as the RRP except that in the latter, the identical repaired component is returned to the customer, whereas in the former, a different (but comparable) repaired Joy component is returned. In both instances, the customer is rendered a bill for the total cost of repair. The bill is itemized showing separate charges for replacement parts and labor. For these reasons, the court concluded that because sales tax is not assessed on labor in Joy's RRP, it likewise should not be assessed on labor itemized in the CEP.

By meticulous ratiocination, the Cabinet has assembled the statutes and regulations [6] relative to sales to bolster its position. The provisions of KRS 139.050 (gross receipts), KRS 139.100 (retail sale), KRS 139.110 (retailer), KRS 139.120 (sale), KRS 139.130 (sales price), KRS 139.160 (tangible personal property), and KRS 139.200 (imposition of sales tax) are neatly arranged and skillfully argued. Indeed, we believe the resolution of this case lies in the simple construction and interpretation of subsections (1) and (4) of 103 KAR 27:150 in light of the applicable statutes governing accrual and payment of sales and use taxes, as provided in KRS Chapter 139. However, our conclusion differs from that drawn by the Cabinet.

The gravamen of the dispute between the Cabinet and Joy centers around those separate subsections as they relate to KRS 139.110(1).[7] The Cabinet contended and

---

**6.** The Cabinet is empowered to promulgate regulations under KRS 131.130(1).

**7.** KRS 139.110(1) provides: "(1) 'Retailer' includes:
(a) Every seller who makes any 'retail sale' or 'sales at retail,' or who furnishes any services

the Board concluded that subsection (4) was the controlling subsection. 103 KAR 27:150(4) states as follows:

> *If the method* of repairing or reconditioning certain tangible personal property *involves commingling property delivered* to a repairman or reconditioner with similar property so that the customer receives repaired or reconditioned property which may not be the identical property delivered to the repairman or reconditioner but which is exactly the same kind of property or derived from exactly the same kind of property as that so delivered, *tax applies to the entire amount charged* by the repairman or reconditioner *for the exchange* of property, *and no deduction is allowed for services involved since the exchange and other acts incidental to it constitute an integral transaction.* This applies, for example, to the exchange of a reconditioned vehicle motor for a worn motor. (emphasis added)

On the other hand, Joy contended and the Hopkins Circuit Court agreed that 103 KAR 27:150(1) was the proper subsection to apply to the CEP transaction. That subsection provides as follows:

> Repairmen are retailers of parts and materials furnished in connection with repair work in which the value of the parts and materials is substantial in relation to the total charge. This applies, for example, to repairers of motor vehicles, airplanes, bicycles, machinery, farm implements, musical instruments, radios, television sets, boats, and furniture. *The repairman should segregate on the invoices to their customers and in their records the fair retail selling price of the parts and materials from the charges for labor of repair and installation and other services. The tax is applicable to the selling price of said*

property. *If the labor and other services are not thus shown separately from the selling price of the property furnished, it will be presumed that the entire charge represents the sale price of the property and the tax applies thereto.* (emphasis added)

■ In the construction and interpretation of these administrative regulations, we are governed by the same rules which would apply in construing statutes in the same field. 2 Am.Jur.2d *Administrative Law* § 307 (1962). It is, therefore, necessary to ferret out the intent of the Cabinet in promulgating the regulations under consideration. *Cf. Wesley v. Board of Educ. of Nicholas County*, Ky., 403 S.W.2d 28, 29 (1966) (holding "the fundamental touchstone [is] that the will or intent of the legislature must be a pole star to guide us"). The intent is to be gleaned from the "words employed in ... the [regulation] rather than surmising what may have been intended but not expressed." *Kentucky Ass'n of Chiropractors, Inc. v. Jefferson County Medical Soc'y*, Ky., 549 S.W.2d 817, 821 (1977).

■ Having arrived at the intent of the promulgator, a regulation is valid unless it exceeds statutory authority or, in some way, is repugnant to the statutory scheme. *See id.; Robertson v. Schein*, 305 Ky. 528, 204 S.W.2d 954 (1947); and *Curtis v. Belden Elec. Wire & Cable*, Ky.App., 760 S.W.2d 97 (1988). To allow encroachment upon the legislative powers would be in direct violation of Sections 27 and 28 of our Constitution. In *Robertson*, 204 S.W.2d at 957, it was stated:

> Many authorities and sound reasoning is contained in [*Bloemer v. Turner*, 281 Ky. 832, 137 S.W.2d 387 (1939)] in support of the conclusion reached therein to

and facilities included in KRS 139.100, and every person engaged in the business of making retail sales at auction of tangible personal property owned by the person or others;

(b) Every person engaged in the business of making sales for storage, use or other consumption or in the business of making sales at auction of tangible personal property owned by the person or others for storage, use or other consumption;

(c) Every person making more than two (2) retail sales during any twelve (12) month period, including sales made in the capacity of assignee for the benefit of creditors, or receiver or trustee in bankruptcy;

(d) Any person conducting a race meeting under the provision of KRS Chapter 230, with respect to horses which are claimed during such meeting."

the effect that an administrative board with rule making power cannot by the promulgation of a rule *add to* or *take from* the requirements of the statute it is administering, because to do so would encroach upon the Legislative Department, which, as we have seen, is forbidden by our Constitution.

As we view the sales and use tax scheme set forth in KRS Chapter 139, retailers are required to collect, with certain exceptions, a designated tax on the gross receipts from transfer of tangible personal property. It is not primarily designed to tax services. It was so held in *Revenue Cabinet v. Corum*, Ky.App., 673 S.W.2d 736 (1984).

Considering the words employed, it may be reasonable to conclude that Joy's CEP could be cast under either subsection of the regulation. However, to cast it under subsection (4), as the Cabinet advocates, would, in our opinion, impair the constitutionality of that regulation by impermissibly imposing a sales tax upon substantial services, rather than upon the gross receipts received from the transfer of tangible personal property as contemplated by the statutory scheme. We are bound to construe the regulations to preserve their constitutionality where possible. "A cardinal principle of statutory construction is to save and not destroy." *Folks v. Barren County*, 313 Ky. 515, 232 S.W.2d 1010 (1950) (citing *Bloemer v. Turner*, 281 Ky. 832, 137 S.W.2d 387 (1939)). We apply this same principle to the construction and interpretation of regulations.

Finally, we have arrived at the same conclusion as did the circuit court, albeit by a different route. Under such circumstances, we are bound to recognize the decision of the lower court as valid. The familiar rule is that a correct decision by a trial court is to be upheld on review, notwithstanding it was reached by improper route or reasoning. *White v. Board of Educ. of Somerset Independent School Dist.*, Ky.App., 697 S.W.2d 161 (1985).

For the foregoing reasons, the judgment of the Hopkins Circuit Court is affirmed.

All concur.