BOB HOOK CHEVROLET ISUZU, INC., Appellant,

v.

COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, Appellee.

No. 97–SC–776–DG.

Supreme Court of Kentucky.

Nov. 19, 1998.

Rehearing Denied Feb. 18, 1999.

David H. Vance, Dandridge F. Walton, Walton & Vance, Frankfort, for Appellant.

Thomas G. Karageorge, Borowitz & Goldsmith, PLC, Louisville, for Appellee.

Timothy J. Eifler, Thomas M. Williams, Ogden Newell & Welch, Louisville, for Amicus Curiae, Greater Louisville Auto Dealers Association, Inc.

## OPINION OF THE COURT

This Court granted discretionary review and upon due consideration of the briefs filed herein and after having heard oral argument, has determined that the Opinion of the Court of Appeals rendered on July 18, 1997, adequately represents our view. Accordingly, we hereby adopt the Opinion of the Court of Appeals and reproduce it in full herein:

BEFORE: HUDDLESTON, JOHNSON and KNOPF, Judges.

HUDDLESTON, JUDGE. Bob Hook Chevrolet Isuzu, Inc. (Hook Chevrolet) appeals a Franklin Circuit Court judgment which upheld a ruling of the Kentucky Board of Tax Appeals (Tax Board) that the Commonwealth of Kentucky, Transportation Cabinet (Cabinet) correctly assessed

taxes owing by Hook Chevrolet for various motor vehicles and other transactions it contends were covered by a "U-drive-it" permit. Ky.Rev.Stat. (KRS) 281.014(4).[1]

The Cabinet conducted an audit of Hook Chevrolet covering the period from January 1, 1987 through March 30, 1990, concerning its practices under a "U-drive-it" permit. As a result of the investigation, the Cabinet assessed $19,753.39 in taxes and interest[2] due to the Commonwealth.

The facts and issues in the dispute between Hook Chevrolet and the Cabinet are not in question. Hook Chevrolet has designated 25 vehicles for use as customer courtesy vehicles. Hook Chevrolet insists that this practice is valid under its "U-drive-it" permit. The Cabinet argues otherwise.

The second issue involves the Cabinet's power to assess a tax for missing records under the "U-drive-it" permit. Hook Chevrolet argues that no tax should have been levied because it explained that these records most likely represented transactions that had been voided for some reason or another.

The final issue concerns the propriety of the Cabinet's assessment of usage tax for lease payments either not reported by Hook Chevrolet or payments which were misreported. Hook Chevrolet asserts that it paid the usage tax on all amounts that it actually received from its customers and that, under the applicable statutes, this is the amount from which the tax is correctly determined.

As an initial matter, we note that the standard of review of decisions from the Tax Board, previously set forth in KRS 131.370(4), is now found in KRS Chapter 13B. KRS 131.370(1). KRS 13B .150(1) limits a court to reviewing the record from the administrative agency unless there is an allegation of fraud or misconduct involving a party. The standard of review appears in KRS 13B.150(2):

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:

(a) In violation of constitutional or statutory provisions;

(b) In excess of the statutory authority of the agency;

(c) Without support of substantial evidence on the whole record;

(d) Arbitrary, capricious, or characterized by abuse of discretion;

(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

This section of the statute codifies in one location the varying grounds for review of an administrative decision already recognized in Kentucky jurisprudence. *See* Ky. Const. § 2; *Reis v. Campbell County Bd. Of Educ.*, Ky., 938 S.W.2d 880, 885 (1996); *American Beauty Homes Corp. v. Louisville And Jefferson County Planning And Zoning Comm'n*, Ky., 379 S.W.2d 450, 456 (1964); *Epsilon Trading Co., Inc. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937, 940 (1989); *Bunch v. Personnel Bd., Commonwealth Of Kentucky*, Ky.App., 719 S.W.2d 8, 10 (1986); *Revenue Cabinet v. Moors Resort, Inc.*, Ky.App., 675 S.W.2d 859, 862 (1984).

In the present case the questions to be answered deal with the interpretation of statutes. The construction and application of statutes is a matter of law and may be reviewed *de novo*. The essential thrust of Hook Chevrolet's arguments on appeal is that the Tax Board misapplied the law to

---

1. Now Ky.Rev.Stat. (KRS) 281.014(3). References to statutes in this opinion will be to those in effect for the time period covered by the Cabinet's audit of Hook Chevrolet.

2. Penalties were originally assessed as well, but waived when Hook Chevrolet protested.

the facts. This has been recognized as a matter which is reviewed *de novo*. *Reis, supra* at 886; *Epsilon, supra* at 940.

Our starting point is the term "U-drive-it." KRS 281.014(4) defines this term as meaning one who:

[L]eases or rents a motor vehicle for a consideration to be used for the transportation of persons or property, but for which no driver is furnished, and the use of which motor vehicle is not for the transportation of persons or property for hire by the lessee or rentee.[3]

As the holder of a "U-drive-it" permit, Hook Chevrolet has the option of paying one of two taxes. KRS 138.463(1) provides that the permittee "may pay a usage tax of five percent (5%) levied upon the amount of the gross rental or lease charges paid by a customer or lessee renting or leasing a motor vehicle from such holder of the permit."[4] Gross rental charges are defined in KRS 138.462(4) as the amount paid by a customer for time and mileage only. The statute also defines a lease as a contract supported by consideration. The Supreme Court has held that there is no ambiguity in assessing the usage tax upon gross rental and lease charges. *Revenue Cabinet v. Budget Rent–A–Car Of Cincinnati, Inc.*, Ky., 704 S.W.2d 199, 202 (1986). It also held that gross lease charge means any charge to the customer contained in the lease. *Id.*

The other option for Hook Chevrolet is to pay tax on vehicles registered under the permit in accordance with KRS 138.460(1), which provides for a tax on the retail price of the automobile at the rate of five percent (5%).[5] Retail price is defined in KRS 138.450(4) as dependent upon whether the vehicle is new or used. If it is a new automobile, the retail price is ninety percent (90%) of the manufacturer's suggested retail price. KRS 138.350(4)(a). If the vehicle is used, the retail price is determined by reference to the "blue book" value. KRS 138.350(4)(b).[6]

Hook Chevrolet opted to pay its tax according to the provisions of KRS 138.463(1) for those vehicles registered under its "U-drive-it" permit. Twenty-five of the vehicles registered under the permit were not used for leasing or rental purposes. Instead, these vehicles were utilized as customer courtesy cars or loaners or for various other business purposes. The Cabinet determined that these automobiles had been converted to a business use and, therefore, were not eligible for the alternative tax treatment in KRS 138.463(1).[7]

Hook Chevrolet does not deny it used the vehicles for purposes other than leasing or renting. Rather, it contends that the Cabinet, the Tax Board, and the circuit court erred in interpreting KRS 138.463. Specifically, Hook Chevrolet argues that the only requirement it must meet to claim alternative tax treatment is contained in KRS 138.463(3).[8] That section of the statute states, "[a] holder of a ["U-drive-it"] permit shall pay the usage tax as provided in KRS 138.460 unless he shows to the satisfaction of the cabinet that he is regularly engaged in the renting or leasing of motor vehicles to retail customers as a part of an established business."

Hook Chevrolet asserts that because it has been stipulated that it regularly engages in renting or leasing vehicles to retail customers as a part of an established business it is entitled to utilize the alternative tax treatment of KRS 138.463(1). We disagree.

KRS 138.463(1) conditions the ability of Hook Chevrolet to claim alternative tax treatment on compliance with its remaining provisions. One of those provisions requires that every transaction involving

---

3. KRS 281.014(3), the section currently in effect, is identical.

4. The current version of this section provides for a usage tax rate of six percent (6%).

5. KRS 138.460(1) now provides for a tax rate of six percent (6%).

6. KRS 138.450(4) is now KRS 138.450(9) and is essentially the same.

7. Hook Chevrolet paid no usage taxes on these vehicles during the period covered by the audit.

8. The version of KRS 138.463(3) currently in effect is identical.

vehicles registered under the "U-drive-it" permit must represent "a bona fide arm's length transaction" and requires sufficient consideration to support the transaction. KRS 138.463(9).[9]

 A statute should be construed, if possible, so as to effectuate the plain meaning and unambiguous intent expressed in the law. *McCracken County Fiscal Court v. Graves,* Ky., 885 S.W.2d 307, 309 (1994). A corresponding rule of construction is that a statute should be construed, if possible, so that no part of its provisions are rendered meaningless. *Hardin County Fiscal Court v. Hardin County Bd. Of Health,* Ky.App., 899 S.W.2d 859, 862 (1995).

To interpret KRS 138.463(1) in the manner proposed by Hook Chevrolet would vitiate the clear intent expressed in subsection 9 of that statute—that transactions involving "U-drive-it" vehicles be supported by consideration. In addition, the statute itself requires that holders of "U-drive-it" permits comply with all its sections in order to obtain alternative tax treatment. KRS 138.463(1). The twenty-five vehicles Hook Chevrolet utilized for business purposes clearly do not fall within the parameters of the transactions meant to be covered by the "U-drive-it" permit. There were no charges for use of the vehicles and no rental or lease agreements upon which any bona-fide transaction can be based. The assessment of tax under KRS 138.460 was appropriate.

 Hook Chevrolet next argues that the tax assessed by the Cabinet for missing records of its lease and rental agreements is in error. Hook Chevrolet keeps sequentially numbered records of its lease and rental records. Among those records audited, fifty-six cannot be located. In the absence of these records, the Cabinet averaged the amount charged by Hook Chevrolet in a lease or rental, attributed this amount to each missing record, and assessed the appropriate tax under KRS 138.463(1).

Hook Chevrolet takes issue with the Cabinet's assessment of tax for these missing records because it argues that representatives of the dealership testified that the records involve transactions which were voided for one or another reason such as a customer's change of heart. The Cabinet argues that KRS 138.4631(1)[10] justifies its actions.

KRS 138.4631(1) provides:

If any holder of a permit under KRS 138.463(2) fails or refuses to file a return or furnish any information requested in writing, the cabinet may, from any information in its possession, make an estimate of the permit holder's gross rental or lease charges and issue an assessment against such permit holder based on the estimated gross rental or lease charges and add a penalty of ten percent (10%) of the amount of the assessment so determined. This penalty shall be in addition to all other applicable penalties provided by law.

This section clearly gives the Cabinet the authority to levy a tax when relevant records cannot be located.

Hook Chevrolet's evidence, offered through testimony that the records are something other than taxable transactions, is an alternative explanation of what the records truly represented. While this testimony is evidence, it is not dispositive. *Moors Resort, Inc., supra* at 862. That evidence must be afforded its proper weight along with all the other evidence. The Tax Board, as the finder of fact, is entitled to believe the Cabinet's explanation over Hook Chevrolet's. On appeal, we will not substitute our judgment for the factfinder's. KRS 13B.150(2); *Epsilon, supra* at 940.

---

9. The current version of KRS 138.463(9) provides: "The usage tax reported and paid on every rental or lease of a vehicle registered pursuant to this section shall be based on the fair market rental or lease value of the vehicle.... However, the tax reported and paid to the Transportation Cabinet shall not be less than the amount due based on the actual terms of a rental or lease agreement. The burden of proving that the consideration charged by the holder satisfies this subsection is on the holder."

10. The current version of KRS 138.4631(1) is identical.

The final argument advanced by Hook Chevrolet for reversal is that the Cabinet incorrectly assessed taxes for certain lease and rental transactions based upon the amount in the rental or lease agreement rather than the amount actually paid by the customer. Hook Chevrolet reported and paid taxes in accordance with the amounts that it actually received under these agreements. It contends that the amount a customer actually paid is the amount from which its tax liability under its "U-drive-it" permit should be assessed.

Hook Chevrolet's assertion is incorrect. The Supreme Court has held that gross rentals and gross lease charges referred to in KRS 138.463(1) mean those amounts contained in contracts with the customers of the permit holder "without deductions." *Budget Rent–A–Car, supra* at 202. Therefore, Hook Chevrolet cannot deduct for amounts it did not receive from its customers. The alternative tax in KRS 138.463 is based upon amounts charged in the lease or rental agreement, not upon amounts that the taxpayer asserts (without documentation) it actually received.

The judgment is affirmed.

All Concur.

The opinion of the court of Appeals is affirmed.

LAMBERT, C.J., and COOPER, STEPHENS, STUMBO and WINTERSHEIMER, JJ ., concur.

JOHNSTONE, J., files a separate opinion concurring in part and dissenting in part in which GRAVES, J., joins.

JOHNSTONE, Justice, Concurring in Part, Dissenting in Part.

Respectfully, I dissent, concerning one limited aspect of the opinion. The majority opinion implies that a rental company would be responsible for usage tax on charges due, even if the rental company is unable to collect the fees owed to it. This interpretation would be an overextension of the holding in *Revenue Cabinet v. Budget Rent–A–Car,* Ky., 704 S.W.2d 199 (1986), in which the issue was whether the tax was to be assessed on *all* charges in the rental transaction, not whether the rental agency would owe usage tax if the company is not paid by its customer. The pertinent statute (at issue in the case now before us) provides that tax assessments are to be made on gross charges *paid* by a customer. KRS 138.463(1). This does not include charges owed, but uncollectible. With this exception, I concur in the opinion in all other respects.

GRAVES, J., joins.