RENDERED: APRIL 28, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0166-DG

ESTATE OF PHILLIS T. WORRALL                 APPELLANT
BY EXECUTOR JAMES WORRALL

                ON REVIEW FROM COURT OF APPEALS
V.                        NO. 20-CA-1561
                JEFFERSON CIRCUIT COURT NO. 20-XX-00009
                JEFFERSON DISTRICT COURT 18-P-004814

J. P. MORGAN BANK, N.A.,                  APPELLEE
TRUSTEE OF THE JAMES P. THOMPSON
TRUST

## OPINION OF THE COURT BY JUSTICE VANMETER

## REVERSING AND REMANDING

The Uniform Trust Code, KRS[1] Chapter 386B, sets forth the rights and duties of trustees and beneficiaries upon termination of a trust. The specific duties at termination are set forth in KRS 386B.8-170 and 386B.8-180, including a prohibition on the trustee "request[ing] any beneficiary indemnify the trustee against loss in exchange for the trustee forgoing a request to the court to approve its accounts at the time the trust terminates or at the time the

---

[1] Kentucky Revised Statutes.

trustee is removed or resigns[.]"  In this case, J. P. Morgan Chase Bank, N.A. (the "Bank"), did precisely that and then proceeded to obtain a Jefferson District Court Order which improperly directed the Bank to liquidate the trust assets and pay them into the Jefferson Registry of Court.  Because of the violations of the Bank's statutory and fiduciary obligations to the trust beneficiary, we reverse the opinion of the Jefferson Circuit Court and remand this matter to the Jefferson District Court with directions to require an accounting and to assess any appropriate remedies or damages against the Bank, as further set forth in this Opinion.

## I.    Facts and Procedural Background.

In 1958, James P. Thompson died and his probated will established a testamentary trust for the benefit of his daughter, Phillis Worrall.  James P. Thompson Will, Article Seventh (The "Trust").  The bequest in trust was of specific shares in one company's stock, as to which the then trustee had discretion to pay out to his daughter.  The final dispositive sentence reads, "[u]nless sooner terminated, this Trust shall terminate at the death of my said daughter, and said shares of stock shall in that event be paid over to her estate."  Mrs. Worrall died in June 2018; her son, James Worrall, was appointed as executor of her estate six months later in December 2018.  Worrall is the sole beneficiary of her estate under her probated will.  The Estate and Worrall will be collectively referred to as "Worrall."

Over the course of 2019, the Bank filed at least three motions asserting its desire to liquidate the assets of the Trust and pay the proceeds into the

2

Registry of the Court.  The first two motions were filed in *In re: Trustee under Will of James P. Thompson, f/b/o Phillis Thompson Worrall*, Jefferson District Court, Division Fifteen (Chief District Judge Anne Haynie), Docket No. 83-P-002899, the case file established by registration of the Trust when the Bank's predecessor, Liberty National Bank & Trust Company of Louisville, had become successor trustee in 1983.[2]  Both motions were apparently withdrawn for reasons not appearing in the record.[3]

The third motion to liquidate was filed on December 18, 2019, in *In re: Estate of Phillis T. Worrall*, Jefferson District Court, Division Four (District Judge Julie Kaelin), Docket No. 18-P-004814.[4]  The Bank's motion claimed the liquidation, attendant payment of trustee's and attorney's fees, and release of the trustee was necessitated by Worrall, as his mother's Executor, "repeatedly refus[ing] to sign a receipt and release as required by the [Bank] to liquidate and transfer the assets to the Executor."  The motion attached the Bank's trust officer's affidavit that Worrall, as Executor, "failed to execute the appropriate receipt and release in order to take possession of the Trust assets[,]" that Worrall, as Executor, "was notified of the need to sign a receipt and release to

---

[2] In 1983, the trust registration provisions were contained in KRS 386.655. Those provisions are now set out at KRS 386B.2-050.

[3] The Bank argues that those motions were withdrawn by Worrall's agreement to comply with the Bank's conditions for paying over the Trust's assets.

[4] Just as the reasons for withdrawal of the prior motions are unclear, the reasons this matter was refiled in Jefferson District Court, Division Four, instead of the division in which the Trust had been registered, Division Fifteen, are also unclear. While this process may have been a type of forum shopping, Worrall does not so claim in his brief and we thus do not address it further.

obtain possession of the Trust assets[,]" and that Worrall, as Executor, "has failed to take proper action to take possession of the Trust assets." Significantly, the Bank's counsel had previously corresponded with Worrall's counsel, and in a letter dated November 8, 2019, stated the following:

> As we discussed, our firm has been retained by J.P. Morgan, Trustee of the James Thompson Trust Under Will f/b/o Phillis Worrall (the "Trust"). Pursuant to the terms of the trust, now that Ms. Worrall has died, the Trustee is to distribute all remaining assets to the estate of Phillis Worrall.

> We see two options for how the Trustee can distribute the assets to the estate: Option one is for your client, James Worrall, as Executor of the Estate of Phillis Worrall, to sign the attached simple release form from the Trustee and accept the assets into the estate. Option two is a more formal and expensive option, which would include court intervention and the use of all legal avenues available. We are willing to allow Mr. Worrall to choose which option he would like to pursue, but our client will proceed one way or the other in order to meet their [sic] fiduciary duty to terminate the Trust.

> If Mr. Worrall would like to proceed under option one, please deliver the attached release agreement to me by November 22. If I have not received anything by that date, we will begin to seek court intervention immediately.

The first page of the attached "simple release" was titled "Receipt and Release," identified the Bank as trustee, the Trust, the Bank's account number for the Trust, and thirty assets to be distributed in "partial satisfaction of the share of the undersigned[.]" The second page of the "simple release" contained the following provisions by which the signatory:

> 2. Releases and discharges JPMorgan Chase Bank, N.A., individually and as the Trustee, from all claims, demands, suits, actions, liabilities and responsibilities of any kind, arising from or related to the entitlement that is described in this instrument.

4

3.   Approves of the Accounts of Trustees [sic] JPMorgan Chase Bank N.A. since inception of the Trust and acknowledges that statements of the activities in the Trust are available upon request.

4.   Agrees to return any or all of the property described above, to JPMorgan Chase Bank, N.A., upon demand, if recourse thereto becomes necessary for the payment of taxes, expenses, costs or other demands in connection with the administration of the Trust, and agrees to indemnify the Trustee against all such demands or claims, to the extent the property described above is subject to such demands or claims.

On January 8, 2020, the Bank's motion was heard before the Jefferson District Court, Division Four. The district court initially inquired as to the problem and why no response to the motion had been filed. Worrall's attorney, Richard Porter, identified himself and advised that he had just been retained and was requesting time to look at the case.[5] The district court admonished that Worrall had "had lots of time to deal with this." When Worrall's counsel advised that Worrall's brokerage account number was available, the following exchange occurred:

Bank's counsel:  Well, we've been asking . . .

Worrall's counsel:  They don't want to.

Bank's counsel:  We've been asking for that for a year-and-a-half.

Worrall's counsel:  What?

District court: Yeah.

Bank's counsel:  But we need Mr. Worrall to sign a release and indemnification.

Worrall's counsel:  He's not going to do that.

District court:  Then I'm going to order it. Have a good day, gentlemen.

---

[5] According to Worrall, his previous counsel advised on the day prior to the hearing that he, counsel, was in Florida and thus unavailable to appear at the January 8 hearing.

5

Worrall's counsel:  You're going to order the liquidation of the property?

District court:  Yes. This has been going on for more than a year.

Worrall's counsel:  Well, why don't they just transfer it to his brokerage account at Raymond James?

District court:  You are welcome to file something in response if you'd like, but this has been going on far too long.  He decided not to hire someone until today. Not our problem.

Worrall:  Your Honor, may I speak?

District court:  You have an attorney for that reason.

Worrall's counsel:  He would like to address the Court, Judge.

District court:  Okay.

Worrall:  Thank you, Your Honor.  I have wanted the money distributed for a year-and-a-half.  It's in my best interest, since I'm the beneficiary of the estate, the sole beneficiary.  I have provided the bank and the previous counsel, Doug Bozell, the account numbers. The bank has failed on . . . they've ignored two orders to distribute . . .

Worrall's counsel:  Of this Court.

Worrall:  Yeah, from this Court.  Two orders they failed to distribute. All . . . they're demanding an indemnification, and I'm not . . . I don't want to sign an indemnification.

Worrall's counsel:  He's not going to release them of any liability for mistakes they've made.  And if you allow the property to be sold, then the property is . . . it can't be recovered, Judge.

District court:  The file in the case that . . . for more than a year they've been trying to get some sort of agreement.  Nothing

Worrall's counsel:  Well . . .

District court:  Let me finish.  Do not interrupt.

Worrall's counsel:  Okay.

District court:  There has been nothing filed at all saying "here's why I won't do this." He hasn't done anything.

Worrall's counsel:  Well, now he's going to. He now has competent counsel . . .

District court:  It's a little too late, sir.  That's what I've said.

Worrall's counsel:  Well, Judge, that's why I'm here, to explain that to the Court.

6

District court: Today.

Worrall's counsel: We can't . . . we . . .

District court: He retained you today.

Worrall's counsel: . . . have the account number right here.

District court: We are done. We are done. Have a good day.

Worrall's counsel: All right. Well, we'll file an appeal.

District court: Great.

Bank's counsel: Thank you, Your Honor.

(END OF RECORDING)[6]

Immediately following the hearing, on January 8, the district court entered the Bank's tendered Order directing the Bank to liquidate the Trust's assets, paying trustee's and attorney's fees, transferring remaining proceeds to the Receiver of the Court; releasing the Bank as Trustee pursuant to KRS 386B.8-170, and releasing previous registration of the Trust. Worrall appealed the Order to the Jefferson Circuit Court on January 17. On February 7, precisely thirty days following the entry of the district court's Order, the Bank tendered a check in the amount of $831,402 to the Receiver of the Court. Worrall subsequently obtained an Order from the district court directing distribution of trust proceeds to the Estate. Following submission of the case, the circuit court affirmed the district court's action. Worrall then sought discretionary review, in turn, from the Court of Appeals and then from this Court. The Court of Appeals denied review; we granted it.

---

[6] The entire hearing took less than three minutes.

7

## II.    Standard of Review.

This matter largely involves interpretation of the Uniform Trust Code, KRS Chapter 386B, and a trustee's obligations upon the termination of a trust pursuant to its terms.  The construction and application of statutes is a matter of law and may be reviewed de novo.  *Community Fin. Serv. Bank v. Stamper,* 586 S.W.3d 737, 741 (Ky. 2019); *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet,* 983 S.W.2d 488, 490 (Ky. 1998).  We therefore review the statute without deference to the statutory interpretation of a lower court.  *Est. of Benton by Marcum v. Currin,* 615 S.W.3d 34, 36 (Ky. 2021); *Hauber v. Hauber,* 600 S.W.3d 204, 207 (Ky. 2020).  Further, we note that a court has a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. *Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky. 1984).

As to whether the district court, as the trial court in this instance, abused its discretion in entering the January 8 Order, "[t]he test test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth ex rel. Conway v. Thompson,* 300 S.W.3d 152, 162 (Ky. 2009).

## III.    Analysis.

Worrall raises a number of issues before us.  First, he alleges the Bank's failure to perform pursuant to the Trust terms and its violation of statutory and fiduciary duties.  Second, he alleges that the district court denied him due process of law in conducting a three-minute hearing without a meaningful

opportunity to be heard, present evidence, and respond.  The Bank counters that Worrall failed to preserve any argument for appeal and was provided with due process. The Bank further argues that it did not present Worrall with an "ultimatum," and that Worrall is seeking to litigate claims unconnected with this appeal.

### A.    Violation of Statutory and Fiduciary Duties.

1.    <u>Statutory Violations</u>.    In enacting the Uniform Trust Code, the legislature codified comprehensive provisions governing many situations which would occur in trust management.  As to termination of a trust, KRS 386B.8-170, Distribution upon Termination, and KRS 386B.8-180, Duties of Trustee upon Termination, appear applicable to the Trust at issue in this case.

As an initial matter, the Bank phrased its motion in the district court as one under subsection KRS 386B.8-170, which provides, as follows:

> (1)   Upon termination or partial termination of a trust, the trustee may send to the beneficiaries a proposal for distribution. **The right of any beneficiary to object to the proposed distribution terminates if the beneficiary does not notify the trustee of an objection within thirty (30) days after the proposal was sent, but only if the proposal informed the beneficiary of the right to object and of the time allowed for objection**.
>
> (2)   Upon the occurrence of an event terminating or partially terminating a trust, the trustee shall proceed expeditiously to distribute the trust property to the persons entitled to it, subject to the right of the trustee to retain a reasonable reserve for the payment of debts, expenses, and taxes.
>
> (3)   A release by a beneficiary of a trustee from liability for breach of trust is invalid to the extent:
>
> (a) It was induced by improper conduct of the trustee; or

9

(b) The beneficiary, at the time of the release, did not know of the beneficiary's rights or of the material facts relating to the breach.

(emphasis added).

The record does not reveal and, importantly the Bank failed to allege, that its proposal for distribution informed Worrall of his right to object and of the time allowed for objection. *See PNC Bank, Nat'l Ass'n v. Edwards*, 590 S.W.3d 818, 820 (Ky. 2019) (removing bank trustee advised beneficiary of her right to object to any action or omission and of the time allowed for objecting). As a result, section 1 of KRS 386B.8-170 is inapplicable to any resolution of this matter.[7]

By contrast, KRS 386B.8-170(2) and KRS 386B.8-180 do apply. The former required the Bank, as trustee, to "proceed expeditiously to distribute the trust property to the persons entitled to it[.]" The record discloses that the Bank for over a year conditioned distribution on Worrall's executing an overly broad release and when he objected, it failed to follow the statutory procedures of KRS 386B.8-180. This latter statute sets forth a number of items to be provided to the beneficiary when a trust terminates by its terms: "the fair market value of the net assets to be distributed, a trust accounting for the prior five (5) years and an estimate for any items reasonably anticipated but not yet received or disbursed, the amount of any fees, including trustee fees,

---

[7] To be clear, a trustee's failure to notify a beneficiary of the right to object and the timing of an objection only renders section (1) of KRS 386B.170 inapplicable to termination. Sections (2) and (3) of this statute still apply.

10

remaining to be paid, and notice that the trust is terminating." KRS 386B.8-180(1)(a). The immediately following subsection provides for a hearing in the district court to resolve a beneficiary's objections as set forth in written notice provided to the trustee. KRS 386B.8-180(1)(b). The requirement of written objection and district court hearing, however, only ensues after the proper delivery to the beneficiary of the items required by KRS 386B.8-180(1)(a).[8] Again, the Bank did not allege, and the record does not contain, the required notice and information required by the initial subsection.

Worrall, and the Bank as well, clearly and unambiguously brought to the attention of the district court, in its truncated hearing, that the Bank was requiring a release and indemnification agreement in order for Worrall to obtain distribution of the Trust. Any argument that this issue was not preserved is plainly disproved by the record. *See Fischer v. Fischer*, 348 S.W.3d 582, 591 (Ky. 2011) (stating that "the answer to the question of how much specificity of grounds is required [for preservation] is resolved by simply saying that enough must be stated to establish the basis of the movant's argument so that the trial court has the opportunity to consider that basis in making a ruling[]"); *see also Skaggs v. Assad, ex rel. Assad*, 712 S.W.2d 947, 949 (Ky. 1986) (noting matter in question was not preserved because neither party

---

[8] In fact, the Bank's "simple release" provided that trust statements were available on request. Under this statute, the notice requires delivery to the beneficiary of five-years' accounting. While five-years' worth of trust statements detailing assets held, bought and sold, and itemizations of receipts and disbursements likely would satisfy the accounting requirement, a boilerplate provision that "statements of the activities in the Trust are available upon request" clearly does not.

11

submitted a request, oral or written, to the trial court[]).  The Bank's action was in direct violation of KRS 386B.8-180(5): "**[n]o trustee [of a] trust shall request that any beneficiary indemnify the trustee against loss in exchange for the trustee forgoing a request to the court to approve its accounts at the time the trust terminates or at the time the trustee is removed or resigns . . . .**"[9]  The Bank's trust officer admitted this violation; Bank counsel's November 8, 2019, letter contained the violation;[10] and Bank counsel directly advised the district court of the violation at the January 8 hearing.  While we might agree that prudent practice dictates a trustee's attempt to receive such a document, however titled, it is simply beyond the pale for a trustee to extort such a document when the legislature has provided an adequate mechanism and remedy for the settlement and distribution of trust assets.

    2.   <u>Breach of Fiduciary Duties</u>.   Worrall argues that the Bank violated its fiduciary duty to administer the Trust by liquidating the Trust's assets.  This issue was similarly preserved by Worrall's oral objection to the liquidation

---

[9] This section states, in full:

        No trustee trust [sic] shall request that any beneficiary indemnify the trustee against loss in exchange for the trustee forgoing a request to the court to approve its accounts at the time the trust terminates or at the time the trustee is removed or resigns, except as agreed upon by the parties pursuant to paragraph (b)1. or 2. of subsections (1) and (2) of this section.

[10] We must note the irony of Bank counsel's letter asserting "Option two" as "court intervention and use of all legal avenues available" since the Bank pursued avenues NOT legally available, *i.e.*, failure to comply with statutory requirements and liquidation of trust assets.

12

and request for an in-kind distribution. We agree with Worrall that the Bank violated its fiduciary duties in administering the Trust.

As noted by Professor Scott, "[t]he extent of the duties and of the powers of a trustee depends primarily upon the terms of the trust." 2 Austin Wakeman Scott, *Scott on Trusts* § 164 (3d ed. 1967); *see* KRS 386B.1-030(2) (providing that "[t]he terms of the trust prevail over any provision of this chapter[]"); KRS 386B.8-010 (requiring the trustee to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries[]"). Mr. Thompson's will, in the provisions of Article Seventh, directed the trustee "at the death of my said daughter, . . . said shares of stock shall in that event be paid over to her estate." Obviously, the Trust's corpus had been diversified over Mrs. Worrall's lifetime,[11] but Mr. Thompson's direction was to distribute the Trust's assets in kind. While authority may exist that distribution in cash was permissible, in *Lucas v. Mannering,* 745 S.W.2d 654, 655-56 (Ky. App. 1987), the court held that notwithstanding a fiduciary's power to sell real estate, the fiduciary's authority to do so was not unqualified and could not override the beneficiaries' desire to receive distributions in-kind.

The record discloses absolutely no reason justifying liquidation of the Trust's corpus to cash. From the Bank's point of view, Worrall very well may have been difficult to deal with. He apparently sought removal of the Bank as

---

[11] The original trust corpus was 8,000 shares of the Class B common stock of Glenmore Distilleries Company.

trustee and then failed to follow through to secure his own appointment as trustee. He may have procrastinated in securing his own appointment as executor under Mrs. Worrall's will. He may have indicated his agreement to sign the Bank's "simple release" and then reneged. He may have done all those things and been unpleasant to deal with. But those failings do not justify the punitive and vindictive actions of the Bank in seeking a liquidation of the Trust's assets, again, when the legislature has provided an adequate mechanism and remedy for the settlement and distribution of trust assets.

3. <u>Remedies</u>. The question remains, what may be the remedies for the Bank's statutory and fiduciary violations? KRS Chapter 386B.10 provides a number of remedies that may be applicable. "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." KRS 386B.10-010(1). Remedies for breach of trust may include "redress a breach by paying money, restoring property, or other means[,]" KRS 386B.10-010(2)(c); "order[ing] a trustee to account[,]" KRS 386B.10-010(2)(d); "reduc[ing] or deny[ing] compensation to the trustee[,]" KRS 386B.10-010(2)(h). In addition to the specific remedies as set out in KRS 386B.10-010, KRS 386B.10-020(1) provides as a remedy, "the greater of: (a) [t]he amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or (b) [t]he profit the trustee made by reason of the breach." The beneficiary may also be entitled to "costs and expenses, including reasonable attorney's fees." KRS 386B.10-040.

14

The remedies to which Worrall is entitled are to be addressed by the Jefferson District Court on remand. At a minimum, we anticipate that Worrall is entitled to an accounting for the Bank's actions as trustee for the five years prior to Mrs. Worrall's death, as well as following her death.[12] In addition, as monetary damages, Worrall is entitled to reimbursement for any capital gains tax he was required to pay;[13] denial and reimbursement of the Bank's trustee's and attorney's fees during calendar year 2019 and thereafter; reimbursement of any commissions incurred by the Bank in liquidating the Trust's assets; reimbursement of the Receiver's fee, $5,000; and payment of Worrall's attorney's fees. The district court is also to calculate Worrall's entitlement to reimbursement for any loss in the value of the investments to which he was entitled and wrongfully deprived. In other words, as to the Trust's assets existing on December 31, 2019, *i.e.*, prior to liquidation, the district court is to ascertain the value of those assets as of the date of this opinion ("current value"). In the event the current value exceeds the value Worrall was paid

---

[12] If this accounting discloses violations of the Bank's duties, Worrall may be entitled to damages for those violations in addition to the remedies set forth in this opinion.

[13] We find curious the Bank's claim that Worrall would not be entitled to reimbursement of capital gains tax since "these taxes would eventually have to be paid." Capital gains tax under the current tax code is only payable following the sale of a capital asset. *See* IRS Topic No. 409, Capital Gains and Losses (https://www.irs.gov/ taxtopics/tc409) (last accessed Mar. 25, 2022) (stating that upon the sale of "a capital asset, the difference between the adjusted basis in the asset and the amount . . . realized from the sale is a capital gain or a capital loss[]"). But for the Bank's malfeasance, Worrall may have delayed indefinitely the sale of any trust assets and thereby delayed or avoided payment of any such taxes, or perhaps sold any appreciated assets in a year when he had offsetting capital losses from other assets.

15

following the extrajudicial liquidation in January 2020, that value represents the damage Worrall has suffered as a result of the Bank's breach of its duties.

As to the Bank's arguments that "[a] trustee does not breach any duty by following a Court's instruction[,]" and it cannot "be held liable in any way, for costs that flow from it following a court order directing it how to distribute Trust assets[,]" we note that this matter was one involving neither competing interests of two or more beneficiaries, nor a novel or questionable course of action fairly debatable under either the law or facts. Under such scenarios, yes, a trustee should request court intervention and decision pursuant to KRS 386B.2-010.[14] This matter, by contrast, involved a routine termination of a trust and a single beneficiary who merely objected to signing an overly broad release and indemnification agreement proffered by the trustee, seeking insulation from any possible liability in its administration of the trust. In other words, it arose from the Bank, as trustee, placing its corporate interests above those of its beneficiary. In KRS 386B.8-180, the legislature has sought to provide a fair and balanced mechanism for resolving an impasse such as occurred here, protecting the interests of both the trustee and the beneficiary(ies). The Bank's clear remedy was not the action taken; rather, it

---

[14] In matters involving trust termination or removal of a trustee, the more specific statute, KRS 386B.8-180, governs over the general statute, KRS 386B.2-010, which authorizes court intervention in trust administration. *See Commonwealth v. Phon*, 17 S.W.3d 106, 107 (Ky. 2000) (holding that "[w]hen there appears to be a conflict between two statutes, as here, a general rule of statutory construction mandates that the specific provision take precedence over the general[]"). In *PNC Bank*, we addressed the interplay between KRS 386B.8-180 and KRS 386B.2-030, another general jurisdictional statute. 590 S.W.3d at 821-23.

was to give the notice and information required in KRS 386B.8-180(1)(a) and follow the procedure set out in subsection (1)(b) of that statute. If the Bank had merely followed the statutory procedure, its interests and those of Worrall would have been protected. This procedure was available to the Bank at all times following Worrall's appointment as executor under Mrs. Worrall's will. Because the Bank chose to ignore the statutory remedy, to disregard the trust terms for distribution, and to lead the district court to clear error, it justifiably bears responsibility for any and all damages suffered and proven by Worrall.

Finally, the Bank's argument that reversal would result in reinstating the Trust, reappointing Bank as trustee and restoring the Trust's assets to the Bank is unavailing. Worrall sought an accounting from the Bank and an in-kind distribution. The district court is to order an accounting, KRS 386B.10-010(2)(d), and appropriate damages. KRS 386B.10-010(2)(c), KRS 386B.10-020(1)(a). The district court is neither compelled to nor should it reinstate the Trust or reappoint the Bank as trustee.

### B.      *Denial of Due Process.*

Because we have resolved this matter on the basis of Worrall's claims of statutory violations and breaches of fiduciary duties, we do not address Worrall's arguments concerning the district court's denial of due process, other than to note the January 8 hearing was woefully inadequate to address Worrall's concerns. That said, we understand that district judges all over the Commonwealth deal with a voluminous number of cases and that their time to do so is often limited. District courts in various counties are set up for this

17

volume and have devised various ways to "transact business," in order to save time and address all the important matters assigned to them. We understand that resolution of trust and/or estate disputes can be taxing and require extraordinary dedication of judicial time and resources. Furthermore, we recognize that these disputes are not such as district courts are accustomed to resolving. However, a district judge simply cannot order the liquidation of an approximate $900,000 trust with less consideration than what the judge might give to a default judgment on a $2,500 credit card debt. The legislature, as the maker of public policy in this Commonwealth, has established subject matter jurisdiction in the district courts not only in matters of the sort presented here, KRS 386B.8-180(6), but also on numerous similarly contested issues. *See PNC Bank*, 590 S.W.3d at 822 (holding that district court had jurisdiction to resolve disputes under KRS 386B.8-180(2)); *Privett v. Clendenin*, 52 S.W.3d 530, 531 (Ky. 2001) (interpreting district court jurisdiction over a custodian's accounting under KRS 385.192(1)); *Maratty v. Pruitt*, 334 S.W.3d 107, 111 (Ky. App. 2011) (interpreting jurisdictional requirements of KRS 395.617). Thus, district judges are not to give these matters short shrift but are to accord them appropriate and due consideration.

## IV. Conclusion.

Based on the foregoing, the Jefferson District Court's Order liquidating the Trust's assets constituted a clear abuse of discretion in that it was arbitrary, unreasonable, unfair, and unsupported by sound legal principles.

18

For the foregoing reasons, the Opinion and Order of the Jefferson Circuit Court is reversed. This matter is remanded to the Jefferson District Court for appropriate proceedings consistent with this Opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Allen P. Dodd, III
Dodd & Dodd Attorneys, PLLC

COUNSEL FOR APPELLEE:

Christopher Wilson Brooker
Wyatt Tarrant & Combs LLP