**FRENCH BANK OF CALIFORNIA,**
**Appellant,**

v.

**FIRST NATIONAL BANK OF**
**LOUISVILLE, Appellee.**

Court of Appeals of Kentucky.

Aug. 3, 1979.

Edward S. Bonnie, Stephen R. Schmidt, Brown, Todd & Heyburn, Louisville, for appellant.

David M. Pottinger, David W. Harper, Morgan & Pottinger, Louisville, for appellee.

Before COOPER, GANT and HOWERTON, JJ.

HOWERTON, Judge.

French Bank of California (French Bank) appeals from a summary judgment entered

---

by the Jefferson Circuit Court dismissing its claim for the restitution of $30,000.00 mistakenly transferred to the First National Bank of Louisville (First National). There appears to be no genuine issue of material fact, so the basic issue is whether under the facts First National was entitled to judgment as a matter of law.

On February 27, 1975, French Bank transferred by wire $30,000.00 from the account of its customer, Fossil Energy Corporation, to Bank of America which wired the funds to First National to be transferred to the account of Total Coal Sales, Inc., a customer of First National. A telex operator, employed by French Bank, sent the message three times instead of just once, but Bank of America only instructed First National to make two transfers. First National received the first transfer of $30,000.00 on Friday, February 28, and the second transfer of $30,000.00 on Monday, March 3. It credited both transfers to the account of Total Coal Sales.

It was not until Thursday, March 13, that French Bank learned of its mistake. On Friday, March 14, at 3:00 p. m. Louisville time, Mr. Maugein, a vice-president at French Bank, called William Earley, a vice-president at First National. Maugein requested First National to return the $30,000.00 or freeze that amount in Total Coal's account to prevent withdrawal. Around 4:00 p. m., Maugein again called Earley and proposed that French Bank would indemnify First National if they would return the $30,000.00. On Monday, March 17, Earley received a letter from Maugein confirming the Friday telephone conversations and expressing a willingness to indemnify First National. The letter merely read in part, "We are willing to supply to you a statement to the effect that the second transfer was a duplication in error of the first one and to guarantee those facts so as to protect and indemnify you." No document constituting an indemnifying agreement or bond was ever submitted, however.

Frederick Harned, an officer at First National, talked to John Collins, president of Total Coal Sales, and asked to see him personally the next day. Collins went to First National on Tuesday, the 18th, but avoided meeting with Mr. Harned and instead transferred $30,000.00 from Total Coal's account to an account of the Breathitt Coal Sales Company in Paris, Kentucky. At this point, approximately $6,000.00 remained in Total Coal's account. Total Coal later became insolvent, and French Bank now looks to First National to recover its mistaken transfer of $30,000.00.

French Bank argues that equity requires the restitution of money paid under a mistake of fact when the party receiving the money has notice of the mistake and has not irrevocably changed its position so that it would be inequitable for the party to return the money. *German Security Bank v. Columbia Finance and Trust Company*, 27 Ky. 581, 85 S.W. 761 (1905). French Bank claims that First National received notice of the mistaken transfer on Friday, March 14, and that it was still in possession of the money. French Bank further argues that First National had not irrevocably changed its position, and it was therefore incumbent upon First National to return the money. We cannot agree, because we conclude that First National had irrevocably changed its position to its detriment once it credited the money to the customer's account.

If Total Coal had attempted to transfer the money and First National had wrongfully dishonored the transfer, because it had returned the money to French Bank, First National would have been liable for damages caused to Total Coal by the wrongful dishonor. KRS 355.4–402. First National was caught between two potential claims for the money.

The question of adverse claims against deposits seems to have been resolved for future situations by the enactment of KRS 287.800 in 1978. Under the new statute, French Bank would have had to obtain a court order or execute an acceptable indemnifying bond in order to withdraw or hold the deposit. The Uniform Commercial Code had already established similar requirements for adverse claims against nego-

tiable instruments. KRS 355.3–603. The policy is sound, and with or without the new statute, it is appropriate in this situation. First National innocently received the $30,000.00 and made the deposit as instructed. Ten days later it was informed by one side of a mistake. First National could either ignore the claim, until protected, and incur the wrath of French Bank, or honor the claim and subject itself to damages by its customer for potential wrongful dishonor, a no-win situation. The protection was not provided, and we agree with the trial court that the law in this situation was for First National.

Many states, including California, have statutes similar to KRS 287.800. They are necessary for sound modern banking. They reaffirm the determination that it is commercially inappropriate and impractical to subject a bank to liability for wrongful dishonor because of an adverse claim against the deposit, when the claim is unaccompanied by sufficient indemnity, an injunction, or court order.

The summary judgment is affirmed.

COOPER, J., concurs.

GANT, J., dissents.

GANT, Judge, dissenting.

As the majority points out, the problem here presented has been resolved for the future by the enactment of KRS 287.800, but this statute was not in effect at the time of the transaction here involved.

Of particular significance here are the conversations between the appellant and appellee. When appellant first notified appellee of the mistake, First National requested a letter from French Bank, and a letter only. The impression was thus given by First National to French Bank that nothing else would be required. First National admits that it made no request of French Bank for a bond to protect it. Thus, with no statute requiring the posting of a bond and no request by First National, French Bank sent the requested letter, setting out in detail the error and requesting assistance. The letter further offered to guarantee, protect, and indemnify First National against any loss. This letter was not requested, and First National even erroneously informed French Bank that there were not sufficient funds in the depositor's account when, in fact, the funds had not been withdrawn.

The majority frets itself needlessly over the possibility of damages from a "potential wrongful dishonor." Here, there was no wrongful dishonor, in fact no dishonor at all. The law is well stated in 10 Am.Jur.2d, *Banks*, § 510, where it is pointed out as follows:

It is generally held that where a bank receives money by mistake, and in some manner turns the money over to its depositor or customer, and it cannot readily recover the payment by charging the customer's account or otherwise, it has changed its position and is not liable for the money paid to it by mistake. However, where the bank *is able to recover the money, as by charging the payment against the account of a depositor, it is no defense that it has turned the mistaken payment over to its customer.* (Emphasis added).

See also *German Security Bank v. Columbia Finance and Trust Co.*, 27 Ky. 581, 85 S.W. 761 (1905), in which the court held that an irrevocable change of position must occur before the bank can assert a defense against such an error.

Under the facts of this case, where French Bank notified First National of the mistake prior to the time that there had been any change in position, where there was no law requiring the posting of a bond and French Bank offered to guarantee First National against any loss, where every conversation between the parties indicated that the actions taken by French Bank were satisfactory to First National, the law should fall on First National.

I must therefore dissent.