Joseph W. LINDLEY, Appellant,

v.

PADUCAH BANK & TRUST, Appellee.

No. 2001–CA–001765–MR.

Court of Appeals of Kentucky.

Oct. 25, 2002.

Discretionary Review Denied by Supreme Court Sept. 10, 2003.

Dennis L. Null, Law Offices of Null, Thomas, Samson & Paitsel, Mayfield, KY, for Appellant.

James B. Brien, Jr., Bryan E. Wilson, Neely & Brien, Mayfield, KY, for Appellee.

Before EMBERTON, Chief Judge; DYCHE and HUDDLESTON, Judges.

HUDDLESTON, Judge.

Joseph W. Lindley appeals from a McCracken Circuit Court judgment on the pleadings in favor of Paducah Bank & Trust dismissing his complaint alleging that the bank was negligent in failing to "exercise good faith and use ordinary care" in handling the accounts of Lindley, Inc., a corporation Lindley and his brother, Tommy Lindley, shared ownership of equally. In his complaint, Lindley further alleged that the failure of Paducah Bank to properly manage the accounts constitutes a breach in its contract with Lindley, Inc. to which he is a beneficiary. Lindley also appeals from the court's order denying his motion to alter, amend or vacate the judgment against him.[1]

According to Kentucky Rules of Civil Procedure (CR) 12.03, any party may move for judgment on the pleadings after the pleadings are closed "but within such time as not to delay the trial." However, "[i]f, on such motion, matters outside pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in [CR] 56, . . ." Here,

---

1. In its original order, the court mistakenly listed the date of entry as March 25, 2001. The court amended its prior judgment to reflect the correct date, May 25, 2001, in its subsequent order.

the motion filed by Paducah Bank was entitled "motion for judgment on the pleadings and/or motion for summary judgment"; the court treated it as a motion for judgment on the pleadings and we will review its judgment accordingly.[2] "For the purpose of testing the sufficiency of the complaint the pleading must not be construed against the pleader and the allegations must be accepted as true."[3] Consistent with that directive, the following factual summary is derived from the complaint and represents Lindley's version of the events in question.

Lindley and Tommy formed Lindley, Inc. in 1992. They selected Peoples Bank & Trust as the bank for the corporation. Lindley served as president of Lindley, Inc. which "became a thriving business and generated substantial profits" for its owners, the only shareholders. In early 1997, a dispute developed between Lindley and Tommy concerning control of Lindley, Inc. and litigation ensued with both brothers having legal representation. During this period, Tommy removed corporate funds from Peoples Bank without Lindley's consent. Tommy then opened two accounts at Paducah Bank, a demand deposit account and an investment account, in which he deposited the money.

On October 30, 1997, Lindley, in his capacity as president of Lindley, Inc., sent a letter to Paducah Bank addressed to its president, informing the bank that the aforementioned accounts were opened without the necessary corporate approval and requesting that the accounts be frozen. It is undisputed that Lindley did not procure a restraining order, injunction or other process against Paducah Bank from a court of competent jurisdiction or execute in favor of Paducah Bank, in form and with sureties acceptable to the bank, a bond indemnifying the bank. An agent or representative of Paducah Bank "led [Lindley] to believe" that the accounts had been frozen as a result of his letter providing "notice of the improprieties" and he "relied upon" that representation.

Apparently, Paducah Bank continued to allow Tommy unfettered access to the corporate accounts "despite having actual knowledge" of the ongoing dispute between Lindley and Tommy until March 30, 1999. By letter of that date, counsel for Paducah Bank notified both brothers and their respective counsel that it would refuse to honor any drafts drawn on the corporate accounts that did not appear to be issued in the ordinary course of business. Ultimately, Lindley and Tommy resolved their dispute by entering into a settlement agreement pursuant to which Tommy purchased Lindley's interest in Lindley, Inc. However, Lindley was, he alleges, "forced to accept a settlement" that awarded him significantly less than the "true value of his share" of the corporation because Paducah Bank permitted withdrawals from the corporate accounts that "weakened the financial position of Lindley, Inc.," causing the value of Lindley's interest to decrease.

Lindley subsequently filed a complaint alleging two causes of action against Paducah Bank, the first being a negligence claim and the second characterized as a

---

2. Lindley contends that his brother Tommy presented matters outside the pleadings at several stages of the proceedings below, presumes that the court considered those issues and, therefore, argues that the motion should have been treated as a motion for summary judgment. Although it is impossible to tell from the order whether the court considered matters outside the pleadings, our resolution of the instant case renders this issue moot and further elaboration is unwarranted.

3. *Pike v. George*, Ky., 434 S.W.2d 626, 627 (1968).

breach of contract. Specifically, Lindley claimed that the bank "knew or should have known that the corporate accounts were being misused and being used without proper corporate authority"; "the acts and omissions" with respect to these accounts "constitutes negligence under the law"; as a direct and proximate result of this negligence, Lindley suffered damages in excess of the minimum jurisdictional amount for the circuit court, including "a diminution in the value of his share of Lindley, Inc." and "losses attributable to the forced settlement"; and the damages sustained by Lindley were "known by Paducah Bank and/or were reasonably foreseeable."

Next, Lindley alleged that the failure of Paducah Bank to properly handle the accounts "constitutes a breach of the contract between Paducah Bank and Lindley, Inc."; Lindley was both a direct beneficiary and a third-party beneficiary of the aforementioned contract; as a direct and proximate result of that breach Lindley suffered damages as described in relation to the negligence claim; and the damages Lindley sustained as a result of the breach were "known by Paducah Bank and/or were reasonably foreseeable."

In response, Paducah Bank filed a motion for judgment on the pleadings and/or summary judgment, citing the following grounds in support thereof:

(1) Because Lindley did not comply with the mandatory provisions of Kentucky Revised Statutes (KRS) 287.800, Paducah Bank was not authorized to freeze the accounts;

(2) Lindley's claims are derivative in nature and cannot be maintained by him individually;

(3) Lindley neglected to name Lindley, Inc. as a party in his complaint as required by CR 19; and

(4) Under CR 17, an action must be prosecuted by the "real party in interest," *i.e.*, Lindley, Inc. as opposed to Lindley.

In his response, Lindley refuted these contentions, arguing that the existence of genuine issues of material facts precluded the court from granting Paducah Bank's motion and, therefore, discovery should be allowed to proceed. As set forth by Lindley, those issues include: (1) whether Tommy breached his fiduciary duty to Lindley; (2) whether Paducah Bank "aided and abetted" Tommy in breaching that duty; (3) whether Paducah Bank assured Lindley that the two corporate accounts had been frozen; and (4) whether Lindley properly relied upon those assertions.

In an order entered on May 25, 2001, the court dismissed the complaint against Paducah Bank with prejudice and ordered Lindley to pay the costs of the action. His subsequent motion to alter, amend or vacate that judgment was denied in an order entered on July 31, 2001. It is those orders which precipitated the current appeal.

CR 12.03 is the Kentucky counterpart of Federal Rule of Civil Procedure 12(c); both have been construed as meaning "that a judgment on the pleadings can be granted only if, on the admitted material facts, the movant is clearly entitled to a judgment." [4] Such a motion is to be determined solely on the pleadings and relief must be denied if there is a material issue of fact.[5] For the purposes of a motion for judgment on the pleadings, the moving party admits "not only the truth of all of his adversary's well-pleaded allegations of fact and fair inferences therefrom, but also

**4.** *Archer v. Citizens Fidelity Bank & Trust Co.,* Ky., 365 S.W.2d 727, 729 (1963).

**5.** *Id.*

the untruth of all of his own allegations which have been denied by his adversary."[6] Thus, the question presented is one of law requiring an examination of the pleadings.

Applying those principles here, a careful review of the pleadings reveals that the dispositive question is whether KRS 287.800 is applicable. As the construction and application of statutes is a matter of law, our review is de novo.[7] In essence, Lindley's argument on appeal is that the court misapplied the law, KRS 287.800, to the facts; this has also been recognized as an issue which is reviewed de novo.[8]

If possible, a statute should be construed "so as to effectuate the plain meaning and unambiguous intent expressed in the law."[9] KRS 287.800, Recognition of adverse claim to a deposit, provides as follows:

Notice to any bank doing business in the Commonwealth of any adverse claim to a deposit standing on its books to the credit of any person shall not be effective to cause the bank to recognize the adverse claim unless the adverse claimant shall either:

(1) Procure a restraining order, injunction, or other appropriate process against the bank from a court of competent jurisdiction, where the person to whose credit the deposit stands is made a party to the action and served with summons; or

(2) Execute to such bank, in form and with sureties acceptable to it, a bond indemnifying the bank from any and all liability, loss, damage, costs, and expenses, for and on account of the payment of the adverse claim or the dishonor of any check or other order of the person to whose credit the deposit stands on the books of the bank.

Lindley argues that KRS 287.800 does not apply as it is not an adverse claim against a deposit made at Paducah Bank that is at issue here but the "aiding and abetting a fiduciary (Tommy Lindley) in an enterprise wherein the individual is bre[a]ching his fiduciary relationship to the other shareholder"; his argument is based on a faulty premise, namely that "deposit" encompasses only individual transactions. In an attempt to clarify his position, Lindley emphasizes that it is the withdrawals from the accounts in question rather than the deposits to them which are of significance, misunderstanding the term "deposit" as employed in the present context.

Pursuant to KRS 287.900(d), a " 'Deposit' has the meaning accorded it in the Federal Deposit Insurance Act, as amended, and regulations promulgated thereunder" which is codified at 12 U.S.C. secs. 1811 et seq. Under the Act, a "deposit" is defined as:

the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by its certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter

---

**6.** *Id.*

**7.** *Bob Hook Chevrolet Isuzu v. Commonwealth of Kentucky, Transportation Cabinet,* Ky., 983 S.W.2d 488, 490 (1998).

**8.** *Id.* at 491.

**9.** *Id.* at 492.

of credit or a traveler's check on which the bank or savings association is primarily liable.... [10]

■ In light of the foregoing, no credible argument can be made that the term "deposit," as referenced in KRS 287.800, is subject to the narrow interpretation promoted by Lindley. As there is no dispute that Paducah Bank received "money or its equivalent" from Lindley, Inc. which it "held" in the "usual course of business" and was obligated to credit to the corporation's accounts, the question becomes whether Lindley's claim was adverse to those "deposits."

■ Adverse means "[o]pposed; contrary in resistance or opposition to a claim, application or proceeding." [11] An adverse claim is defined as "An alleged right of one person asserted against the interest of another person." [12] By definition, then, in asserting his alleged right to the funds contained in the Lindley, Inc. accounts, i.e., deposits, Lindley was advancing a claim that was contrary or "adverse" to the interests of the corporation as evidenced by the language of his complaint. In fact, his request to freeze the accounts was in direct conflict with the instructions of Lindley, Inc. and personifies an "adverse" action; the statute applies. Paducah Bank was left in the untenable position of having to choose between competing claims for the same money with the potential for liability existing regardless of its decision. KRS 287.800 was enacted to resolve this dilemma.

In *French Bank of California v. First National Bank of Louisville,*[13] this Court was faced with a situation which resembles the current one. French Bank mistakenly transferred money to First National which innocently received it and made the deposit as instructed.[14] Ten days later, French Bank informed First National of its error but failed to procure an injunction or court order or execute a bond indemnifying First National from any liability as mandated by KRS 287.800.[15] As First National had "irrevocably changed its position to its detriment once it credited the money to the customer's account" since it would have been liable for damages caused to the customer by wrongful dishonor, we found that First National could not be required to make restitution.[16] In so doing, we observed that the enactment of KRS 287.800 a year earlier seemed to have answered the question posed by adverse claims against deposits. Our reasoning is equally valid today:

> Under the new statute, French Bank would have had to obtain a court order or execute an acceptable indemnifying bond in order to withdraw or hold the deposit. The Uniform Commercial Code had already established similar requirements for adverse claims against negotiable instruments. KRS 355.3–603. The policy is sound, and with or without the new statute, it is appropriate in this situation. * * * First National could either ignore the claim, until protected, and incur the wrath of French Bank, or honor the claim and subject itself to damages by its customer for potential

**10.** 12 U.S.C. sec. 1813(*l*)(1) (2002). *See Federal Deposit Insurance Corporation v. Philadelphia Gear Corp.,* 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986).

**11.** *Black's Law Dictionary,* p. 53 (6th Ed.1990).

**12.** *Id.*

**13.** Ky.App., 585 S.W.2d 431 (1979).

**14.** *Id.*

**15.** *Id.*

**16.** *Id.* at 432.

wrongful dishonor, a no-win situation. The protection was not provided, and we agree with the trial court that the law in this situation was for First National.

Many states, including California, have statutes similar to KRS 287.800. They are necessary for sound modern banking. They reaffirm the determination that it is commercially inappropriate and impractical to subject a bank to liability for wrongful dishonor because of an adverse claim against the deposit, when the claim is unaccompanied by sufficient indemnity, an injunction, or court order.[17]

Contrary to Lindley's assertions, the Lindley, Inc. accounts constitute deposits for the purposes of KRS 287.800, his request to freeze those accounts is properly characterized as an adverse claim according to its plain meaning and *French Bank* is therefore directly on point. Accordingly, Paducah Bank is protected from liability as *French Bank* necessarily dictates the outcome here, dispensing with the need to address Lindley's remaining arguments. Because Lindley failed to comply with the mandatory provisions of the governing statute, KRS 287.800, he cannot now be heard to complain of the evil it was designed to remedy. The McCracken Circuit Court judgment is affirmed.

ALL CONCUR.

---

**17.** *Id.* at 432–433.