**ALLIANCE FOR KENTUCKY'S FU-TURE, INC.; Donald and Marion Stites; Mary Swiggum, Appellants,**

v.

**ENVIRONMENTAL AND PUBLIC PROTECTION CABINET; Sanitation District No. 1 of Campbell, Kenton, and Boone Counties, Appellees.**

No. 2007–CA–001186–MR.

Court of Appeals of Kentucky.

Oct. 10, 2008.

Ordered Published May 8, 2009.

As Modified May 8, 2009.

Discretionary Review Denied by Supreme Court Jan. 13, 2010.

W. Henry Graddy, IV, Midway, KY, for appellant.

Sharon R. Vriesenga, Frankfort, KY, for appellee Environmental and Public Protection Cabinet.

Gerald F. Dusing, Covington, KY, John C. Bender, Lexington, KY, for appellee Sanitation District # 1 of Campbell, Kenton and Boone Counties.

Before CLAYTON and STUMBO, Judges; GRAVES,[1] Senior Judge.

## OPINION

CLAYTON, Judge.

Alliance for Kentucky's Future (Alliance) appeals the Franklin Circuit Court decision upholding the Environmental and Public Protection Cabinet's (Cabinet) administrative decision approving the Regional Facility Plan (RFP) of Sanitation District # 1 of Boone, Campbell, and Kenton Counties (District) for the building of the new Western Regional Waste Water Treatment Plant. The administrative regulations governing RFPs are found at 401 Kentucky Administrative Regulations (KAR) 5:006; they address wastewater planning requirements as mandated by the Clean Water Act. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

The controversy in this case involves the planning by the District for a new wastewater treatment plant for Boone, Campbell, and Kenton counties in Northern Kentucky. The plan addresses wastewater treatment in the District's service area. It calls for two wastewater treatment plants—the Western Regional Wastewater Treatment Plant and the Eastern Regional Wastewater Treatment Plant. The only

plant at issue in this appeal is the Western Regional Wastewater Treatment Plant.

Until 1994, the District primarily ran a single wastewater treatment plant, Dry Creek Wastewater Treatment Plant, which served various cities in Campbell and Kenton counties. In the late 1990's, after consolidation of numerous municipal jurisdictions and wastewater districts, the District became responsible for the operation and management of the sewer and drainage system for Boone, Campbell, and Kenton counties. The District is a publicly-owned treatment works and subject to 401 KAR 5:006, the administrative regulation that governs wastewater planning requirements for regional areas.

Regional planning agencies are required to submit RFPs under 401 KAR 5:006. RFPs are regional water quality management plans for addressing and controlling point sources of water pollution within designated planning areas through the Commonwealth. The regulation sets forth when the RFP must be submitted or updated, the entities responsible for developing an RFP or an RFP update, and the required contents of such a plan. The general language of the controlling regulation requires planning over a two-decade period and updates to address certain major planning developments. As a result of the time period itself—twenty years in the regulation—the only way to meet its requisites is through broad-based planning. Furthermore, during this planning period, the District is also mandated to follow specific Kentucky Division of Water programs including construction and discharge permits for new regional wastewater treatment plants, construction activity, sewer extensions and other activities and initiatives necessary to implement an RFP.

---

1. Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

At the conclusion of the planning process, the administrative regulation states that the Kentucky Division of Water may approve an RFP or RFP update when it finds the plan "has been properly submitted and is in the best interest of the environment and the public." 401 KAR 5:006 Section 6. Additionally, an RFP is required when a new wastewater treatment facility is proposed. Therefore, because both twenty years had elapsed and a new treatment plant was needed, the District began developing the RFP, which ultimately demonstrated the need for the Western Regional Wastewater Treatment Plant.

For five years, 1996 through 2001, the District completed extensive research, analysis, and review of the RFP by nationally credentialed engineering and environmental consultants, and with multiple state and federal agencies. The final version fills seven large binders. As required by 401 KAR 5:006, the District studied the region's existing facilities, evaluated the need for new or modified facilities, and assessed the cost of alternative solutions to meet the area's existing and future needs for wastewater treatment. In August 2001, it submitted its RFP to the Cabinet. At this point, the Cabinet issued its State Planning and Environmental Assessment Report ("SPEAR"), which is the environmental assessment required by 401 KAR 5:006 Section 6. Furthermore, the RFP was subject to review and comment by the public as well as other agencies.

On November 11, 2002, the Kentucky Division of Water approved the RFP as mandated by the procedures in 401 KAR 5:006. The RFP included recommendation for two wastewater treatment plants - an Eastern and a Western Regional Wastewater Treatment Plant. Here, as previously noted, the only plant at issue is the Western Regional Wastewater Treatment Plant.

The site upon which the Boone County plant was to be built belonged to Donald and Marion Stites, who are two of three listed members of the Alliance for Kentucky's Future, Inc., the appellant. While originally the Stiteses approached the District to sell them the land for the new plant, they later refused to do so, and the District had the property condemned pursuant to Kentucky Revised Statutes KRS 220.280. The Stiteses contested the condemnation, but this Court ruled in the District's favor in the unpublished decision, *Garriga v. Sanitation District No. 1*, 2003 WL 22871550 (Ky.App.2003).

Following the Kentucky Division of Water's decision, the Alliance challenged the RFP by filing a petition for hearing with the Cabinet. A twenty-one day evidentiary hearing commenced on August 19, 2003. The hearing officer entered a 415–page report and issued a recommended order on June 1, 2005. He recommended that the secretary uphold the Kentucky Division of Water's approval of the RFP, but suggested a number of conditions, including mitigative measures and studies, updates of certain parts of the RFP, and preparation of supplemental environmental assessment reports.

All parties filed exceptions to the hearing officer's report and recommended order. The Alliance objected to the recommendation that the RFP be approved and the District and Cabinet objected to some recommended conditions. On December 16, 2005, the deputy secretary of the Cabinet (acting upon the Cabinet secretary's recusal) issued a final order, which upheld the Kentucky Division of Water's approval of the RFP and adopted some of the hearing officer's recommendations. Thereafter, the Alliance appealed, pursuant to KRS 224.10–470, to the Franklin Circuit Court. The Franklin Circuit Court entered its order on May 8, 2007, upholding

the final order of the deputy secretary of the Cabinet. The Alliance's appeal is taken from this order.

## STANDARD OF REVIEW

█ When a court reviews the agency's final order, the court may only overturn the agency's decision if the agency acted arbitrarily or outside its scope, if the agency applied an incorrect rule of law, or if the decision itself is not supported by substantial evidence on the record. *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 300–01 (Ky.1972).

█ Arbitrariness is the focus of the court's review of an administrative decision. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964). This landmark case outlines the parameters for judicial review of an administrative agency. It provides that the judicial review is not a *de novo* review of factual determinations made by an administrative agency but rather a review by the court of whether there was substantial evidence to support the agency's conclusion, whether the parties were afforded due process, and whether the agency acted with its established authority. *Id.* Substantial evidence means "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998).

█ Further, this Court is authorized to review issues of law on a de novo basis. *Mill Street Church of Christ v. Hogan,* 785 S.W.2d 263, 266 (Ky.App.1990). Finally, statutory guidance for judicial review of the Cabinet's final order is found in KRS 224.10–470. Thus, in essence, on review the function of the Court is to ensure that the agency's decision is based on substantial evidence of fact in the record and that the

agency did not apply an incorrect rule of law. *Kentucky Unemployment Insurance Commission v. King,* 657 S.W.2d 250 (Ky. App.1983). Under this standard, the Court must uphold the agency's factual findings even if the record shows that there is evidence contrary to those factual findings. *500 Associates, Inc. v. Natural Resources and Environmental Protection Cabinet,* 204 S.W.3d 121, 132 (Ky.App. 2006). Furthermore, in the case at hand, the reviewing Court must also consider the administrative regulation in question, 401 KAR 5:006, which contains the deferential "best interest" standard:

> If the cabinet finds that the regional facility plan has been properly submitted and is in the best interest of the environment and the public, the cabinet will approve the plan.

401 KAR 5:006 Section 6(2).

## ANALYSIS

The Alliance challenges the Cabinet's approval of the RFP on numerous grounds. Each issue will be discussed separately.

1. Deputy secretary's decision was not supported by substantial evidence because the rejection of the hearing officer's report was arbitrary.

█ The hearing officer submitted a 415–page report, which included a recommended order. Of this 415–page report, the deputy secretary adopted approximately 80 percent of its recommendations. But as KRS 224.10–440(1) states:

> All hearings under this chapter shall be held before a qualified hearing officer. . . . After the conclusion of the hearing, the hearing officer shall make to the secretary a report and recommended order which shall contain a finding of fact and a conclusion of

law. . . . The secretary shall consider the report, exceptions, and recommended order and decide the case. . . . The secretary's decision shall be served by mail upon all parties and shall be a final order of the cabinet.

The deputy secretary considered the entire record, the 415–page report, and decided. The decision stands on its own merits and cannot be ruled arbitrary because he did not adopt the hearing officer's report verbatim.

2. Franklin Circuit Court mischaracterized the controversy and misinterpreted 401 KAR 5:006.

An RFP must comply with 401 KAR 5:006, which became effective as a matter of law in 1997, to establish the process by which the Commonwealth shall comply with sections 201, 205, 208 and 303(e) of the Clean Water Act. Both the Cabinet and the Franklin Circuit Court correctly recognized that the Alliance's claims are based on their interpretation of the requirements of the administrative regulation. The Alliance believes that RFPs, under 401 KAR 5:006, must contain detailed plans, assess all future water projects, and address water quality issues within the region, including package treatment plants, Sanitary Sewer Overflows (SSO) elimination, Combined Sewer Overflows (CSO) planning, and sewer line routes for the twenty-year planning process.

 Yet, the hearing officer, the Cabinet, and the Franklin Circuit Judge rejected this approach because they believe that the RFP is a broad-based planning document for the purpose of regional wastewater planning. In addition, 401 KAR 5:006 is not the only administrative or statutory guidance in the area of wastewater planning. Both the hearing officer and the deputy secretary found that detailed requirements for dealing with water quality are established in the Clean Water Act and the Kentucky Division of Water's regulations. Contrary to the arguments of the Alliance, this administrative regulation is not the exclusive provision relating to the issue of clean water nor must it address every eventuality or contingency.

 Not only are there other statutory and administrative guidelines for water quality and planning, the tenets of statutory construction are important. The Alliance is asking that the 401 KAR 5:006 be interpreted as a comprehensive regulatory scheme. Significant, however, in the interpretation of the administrative regulation, 401 KAR 5:006 and all regulatory statutes, is that "in the construction and interpretation of administrative regulations, the same rules apply that would be applicable to statutory construction and interpretation." *Revenue Cabinet, Com. v. Gaba,* 885 S.W.2d 706, 708 (Ky.App.1994) (citing *Revenue Cabinet v. Joy Technologies, Inc.,* 838 S.W.2d 406 (Ky.App.1992)). And the most commonly stated rule in statutory interpretation is that the "plain meaning" of the statute controls. Moreover, Kentucky courts have steadfastly adhered to the plain-meaning rule "unless to do so would constitute an absurd result." *Executive Branch Ethics Commission v. Stephens,* 92 S.W.3d 69, 73 (Ky.2002). Additionally, the plain-meaning rule is consistent with directions provided by the legislature on how to interpret the statutes enacted by it. KRS 446.015.

3. The site selection process for the Western Regional Wastewater Treatment was not supported by substantial evidence.

The Alliance also argues that the site selection process for the Western Regional Wastewater Treatment Plant was arbitrary despite findings by the hearing offi-

cer and the deputy secretary that the process used by the District was appropriate and the site selected was proper. While the Franklin Circuit Court concurred with the hearing officer and deputy director's assessment of the site selection process, it supported its decision by reference to the doctrine of res judicata and held that the issue had already been decided by this Court in the previously cited unpublished decision, *Garriga*, 2003 WL 22871550. Therein, this Court affirmed the decision of the Kenton and Boone County Circuit Courts, and held that the approval of the Judge Executive's Committee was "based on a professional, impartial, and comprehensive analysis." *Id.*

 To ascertain the efficacy of the court's decision, it is necessary to examine the pertinent legal doctrine. Res judicata actually involves two distinct subparts: "claim preclusion," which embodies the typical definition of res judicata, and "collateral estoppel" or "issue preclusion." *Yeoman v. Commonwealth, Health Policy Board*, 983 S.W.2d 459, 464–5 (Ky.1998). "Claim preclusion bars a party from relitigating [sic] a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Id.* at 465. In contrast, "[i]ssue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical." *Id.* The general rule of issue preclusion is "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27. Given that *Garriga* dealt with the District's right to condemn 144 acres of the Stites' farm under

the Kentucky Eminent Domain Act, we do not believe that the issues in the two cases are identical, and therefore, res judicata is not applicable here.

 Nevertheless, we find that the Franklin Circuit Court also noted that there were specific findings by both the hearing officer and the deputy director that the process implemented by the District was proper and the site ultimately selected was an appropriate one. Indeed, the RFP guidelines regarding site selection, found in 401 KAR 5:006 Section 4, were determined by the circuit court judge to be fully supported by the record. Furthermore, the record, on appeal, contains abundant evidence supporting the reasonableness of the site selection process. *500 Associates*, 204 S.W.3d at 133. (Court can review entire record to determine agency based its decision on substantial evidence.)

4. The RFP was not properly submitted under 401 KAR 5:006 because it lacked important information.

According to Alliance, the RFP did not contain all the information required by the administrative regulation 401 KAR 5:006. Based on the Alliance's interpretation of the administrative regulation, the RFP must include detailed plans for all wastewater management projects over a twenty-year period to meet the water quality goals of the Clean Water Act. Consequently, Alliance contends that the RFP must contain water quality goals for the elimination or re-permitting of package plants, address the procedure for leaking septic tanks to hook up to sewers, determine the elimination of SSOs, and include plans in the SPEAR to deal with growth aspects to ascertain whether an environmental impact statement is necessary. This broad interpretation was properly rejected by both the deputy secretary and the Franklin Circuit Court.

Certain information must be provided in the content of the plan so that established water quality goals may be met. *See* 401 KAR 5:006 Section 4. The record clearly demonstrates by exhibits and by testimony of engineers that each element necessary was provided for in the RFP. In fact, the administrative guidelines for an RFP cannot be so distorted that broad-based planning is transformed into a planning that must cover every possible detail and eventuality related to wastewater treatment and water quality. At some point reading more and more detailed requirements into an administrative regulation destroys the very purpose for which the regulation was designed—managing wastewater treatment issues.

a. SPEAR

■ The Alliance contends that, because the Cabinet may approve the SPEAR for the RFP, once the SPEAR has been vetted by the State Clearinghouse, without any judicial review of the SPEAR, the process is arbitrary. Simply put, the administrative regulation mandates "[a]n environmental assessment report will be written by the cabinet which summarizes the regional facility plan." 401 KAR 5:006 Section 6(1). Thereafter, the environmental assessment is submitted to the State Clearinghouse for review and comments. If required, mitigative measures may be necessary to address negative comments.

To analyze whether the process is arbitrary, we first observe that the SPEAR itself is merely one requirement for the RFP. It is used by the Cabinet to assess the environmental impact and assist the Cabinet in its determination of whether to approve the RFP. Second, as noted above, the SPEAR is vetted by the State Clearinghouse and changes are made if necessary before it is approved. And the SPEAR, as part of the RFP, is subject to scrutiny by the public, other agencies, and the judicial system. Hence, the decision to approve the SPEAR itself was not arbitrary because it was based on substantial evidence, vetted by the State Clearinghouse, and ultimately must be approved during the RFP process.

Furthermore, the Alliance argues that the standard "best interest of the environment and the public," found in 401 KAR 5:006 Section 6(2), is vague and overbroad and therefore, unconstitutional. They argue this standard in reference to the SPEAR but in actuality this standard applies to the entire RFP, not just this one section of the administrative regulation. In fact, the Cabinet will only approve an RFP if it has been properly submitted and is in the best interests of the public and the environment. Before approval, the RFP (and SPEAR) must meet all the requirements and standards under 401 KAR 5:006.

■ When an administrative regulation is assessed for vagueness, it must be read as a whole not piecemeal. *County of Harlan v. Appalachian Regional Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky.2002). All the factors provided in 401 KAR 5:006, which guide the Cabinet in its determination whether or not the RFP is in the best interest of the environment and the public, must be considered. Given the extensive and voluminous record of this case, this particular RFP, and its SPEAR, are supported by substantial evidence and have been the subject of much review. Therefore, the decision was not arbitrary and the "best interest" standard is not vague or overbroad in this context.

b. Package Treatment Plants and Failing Septic Systems

■ The Alliance argues that the RFP fails to adequately deal with package treatment plants and failing septic systems. Simply put, this statement is erroneous.

The RFP, as written, contains general plans to eliminate a number of package treatment plants and failing septic systems consistent with growth throughout the planning area. The circuit court's decision noted that the deputy secretary's determination on this point was supported by substantial evidence.

c. Sanitary Sewer Overflows and Combined Sewer Overflows

■■■■ Again, the Alliance argues that the RFP fails because it does not provide a mechanism in the plan for elimination of SSOs and CSOs. The hearing officer, the deputy secretary, and the Franklin Circuit Court Judge, however, all found that detailed requirements for assessing SSOs and CSOs are not established under 401 KAR 5:006 but rather are found in the Clean Water Act and the Kentucky Division of Water Regulations. Moreover, a reading of 401 KAR 5:006 Section 4 does not specifically mention these issues. Thus, returning to the principles of statutory construction, it is inappropriate for courts to add new requirements to an approved regulation. Under basic principles of statutory construction, we assume that the

> "[legislature] meant exactly what it said, and said exactly what it meant." *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky.2005) (citing *Stone v. Pryor*, 103 Ky. 645, 45 S.W. 1136, 1142 (1898) (Waddle, S.J.dissenting)). "Consequently, the intention of the administrative agency is found in the words used in the regulation and not from surmising an intention that is not expressed." *Flying J Travel Plaza v. Commonwealth of Ky., Transportation Cabinet, Department of Highways*, 928 S.W.2d 344, 347 (Ky.1996) (citing *Kentucky Association of Chiropractors, Inc. v. Jefferson County Medical Society*, 549 S.W.2d 817 (Ky.1977)).

*Alliance for Kentucky's Future, Inc. v. Environmental and Public Protection Cabinet*, 310 S.W.3d 681, 2008 WL 4531018 (Ky.App.2008).

Notwithstanding that these factors are not specifically cited by the administrative regulation, the RFP itself did address the issue of SSOs, CSOs, and sewer rehabilitation. Both the seven-volume facility plan and the testimony of many engineers show that part of the facility planning process dealt with these issues. Additionally, the Franklin Circuit Court, following the deputy secretary's finding that the RFP did not have to include specific details of SSO and CSO control and remediation plans, held that it was not necessary to render a decision about appellees' argument concerning the consent decree because the issue was mooted by the finding that specifics concerning SSOs and CSOs do not have to be included in the RFP.

d. Federal Involvement

■■■ With regards to the requirements for the SPEAR as well as the entire RFP, the Alliance contends the Cabinet's approval was contrary to law because it did not comply with 40 Code of Federal Regulations (CFR) 35.3140 and 40 CFR 6.506 nor with the capitalization agreement between the Cabinet and the Environmental Protection Agency (EPA). But the Cabinet found these assertions to be inaccurate because no federal involvement attended this wastewater treatment proposal.

The Alliance makes a vague reference to Section 208 of the Clean Water Act and states that it necessitates a broad interpretation of 401 KAR 5:006. But Section 208 of the Clean Water Act provides for the creation of Regional Water Quality Management Plans. In the 1970s, the United States EPA designated the Ohio–Kentucky–Indiana Regional Council of Governments (OKI) as the Section 208 area-wide

waste treatment management agency. This plan has not been updated since that time and is not applicable to the regional planning agencies of Kentucky.

■ Also, the Alliance suggests that 401 KAR 5:006 should be construed to require an environmental assessment process based on National Environmental Policy Act (NEPA) standards; but, the record does not support such an assertion. First, NEPA standards only apply in federal actions. Still no federal involvement has occurred in the review, development, or approval of the RFP. But, even if there had been federal involvement, there is still no basis for extending the administrative language of 401 KAR 5:006 to encompass such a requirement. Neither NEPA nor NEPA standards are mentioned, and therefore, there is no basis to insert this requirement into the process. Thus, we find, relying again on the plain meaning of the administrative regulation, that the deputy secretary and the Franklin Circuit Court Judge correctly interpreted 401 KAR 5:006.

Based on the administrative language in 401 KAR 5:006 and the Franklin Circuit Court's decision that more specific plans for addressing package treatment plants, septic systems, SSOs and CSOs, and other detailed wastewater infrastructure design is reasonable, we uphold the trial court's decision. And the extensive record in the case provides substantial evidence that the RFP in question contained the mandated information for the proposed Western Regional Wastewater Treatment Plant to comply with 401 KAR 5:006, and thus, was not arbitrary.

## CONCLUSION

After reviewing the entire record before us, we conclude that the circuit court's affirmance of the deputy secretary's final order was proper. The record reveals that the Cabinet acted within its powers granted by statute, no evidence was provided that any party's due process rights were violated, substantial evidence existed to support the Cabinet's decision, and the correct rule of law was applied.

In sum, we hold that the substantial evidence supported the Franklin Circuit Court's determination that the RFP in question met the requirements of 401 KAR 5:006. The Western Regional Wastewater Treatment Plant has been approved since 2002 after thorough and extensive litigation at the preliminary stages. We, however, disagree with the appellee, Sanitation District # 1 that the appellant's challenge to the RFP is moot. The RFP has been reviewed by a hearing officer, a deputy secretary, a circuit court, and now by us. We affirm the decision of the Franklin Circuit Court.

ALL CONCUR.