COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES; and Audrey Tayse Haynes, Not Individually, but in Her Official Capacity as Secretary, Cabinet for Health and Family Services, Appellants

v.

OWENSBORO MEDICAL HEALTH SYSTEM, INC., Appellee

NO. 2015-CA-000229-MR

Court of Appeals of Kentucky.

RENDERED: AUGUST 12, 2016; 10:00 A.M.

BRIEFS FOR APPELLANTS: Matthew H. Kleinert, Frankfort, Kentucky

BRIEF FOR APPELLEE: Stephen R. Price, Sr., Jennifer L. Wintergerst, Louisville, Kentucky

## OPINION

VANMETER, JUDGE:

The Cabinet for Health and Family Services and Audrey Tayse Haynes in her

official capacity as the Secretary for the Cabinet (collectively referred to hereinafter as "Cabinet") appeal from the Franklin Circuit Court's opinion and order reversing and remanding the Cabinet's final order denying Owensboro Medical Health System, Inc. ("OMHS") reimbursement for Medicaid services. For the following reasons, we affirm.

On October 18, 2009, "Patient 2",[1] a Medicaid beneficiary, presented to OMHS's emergency room complaining of chest pain and faintness. The treating physician admitted Patient 2 on an inpatient basis for testing and treatment. He was discharged two days later and OMHS submitted a claim for payment to the Medicaid program for the services provided. Over a year later, OMHS was notified that reimbursement for the inpatient admission of Patient 2 was being retroactively denied on the basis of the Cabinet's medical necessity review which determined that Patient 2 could have been treated at a lower level of care, namely, on an outpatient basis.

After payment for the inpatient admission of Patient 2 was denied, OMHS requested a Dispute Resolution Meeting ("DRM") to contest the Cabinet's conclusion that inpatient services were not medically necessary. At the DRM, OMHS also argued, in the alternative, that it should at least be reimbursed for the services provided to Patient 2 on an outpatient basis. After the DRM, the Cabinet issued an opinion continuing to deny inpatient reimbursement for Patient 2. The opinion did not address payment on an outpatient basis.

OMHS requested an appeal of the DRM opinion and a hearing was held on May 29, 2012. The Hearing Officer found that while Patient 2 did not meet the criteria for inpatient admission, the services provided were necessary and Patient 2 should have been kept for observation on an outpatient basis. However, the Hearing Officer did not decide whether OMHS was entitled to outpatient reimbursement for the services provided. OMHS filed exceptions, and the Cabinet Secretary issued her final order on August 24, 2012, affirming the decision of the Hearing Officer to deny payment for the inpatient admission. The Secretary again failed to address whether payment was due for outpatient services.

OMHS appealed the Cabinet Secretary's order to the trial court. The trial court remanded the case back to the Cabinet for a determination of whether the services provided might be reimbursable as outpatient care. From that order, the Cabinet appeals.

The only issue to be decided, whether Kentucky's state plan prohibits reimbursement at a lower reimbursement rate for services provided at an inpatient level of care that should have been provided on an outpatient basis, is strictly a question of law. Thus, we review this matter *de novo*. *See Alliance for Kentucky's Future, Inc. v. Envtl. & Pub. Prot. Cabinet*, 310 S.W.3d 681, 686 (Ky.App.2008). "Significant, however, in the interpretation of the administrative regulation, [ ] and all regulatory statutes, is that in the construction and interpretation of administrative regulations, the same rules apply that would be applicable to statutory construction and interpretation." *Id.* at 687 (internal quotations omitted). In doing so, we adhere to the "plain meaning rule," meaning that the plain meaning of the statute or regulation controls. *Id.*

Federal law requires that all states participating in the Medicaid program have a federally approved medical assistance plan.

1. This litigation originally involved three patients treated at OMHS.

42 U.S.C.[2] § 1396(a). The Cabinet is the agency tasked with creating this plan pursuant to KRS[3] 194A.010 and KRS 12.020. The plan is not drafted by the Cabinet, but "consists of preprinted material [issued by the federal government] that covers the basic requirements, and individualized content that reflects the characteristics of the particular State's program." 42 C.F.R.[4] § 430.12(a).

Kentucky's receipt of federal funding for Medicaid is contingent upon following the terms of the plan. 42 U.S.C. § 1396(a)(30) requires state Medicaid programs to perform reviews of the medical necessity of services provided by Medicaid providers. Therefore, as part of the Kentucky's plan, the Cabinet has promulgated 907 KAR[5] 3:130, the regulation which establishes the criteria for a determination of medical necessity and permits the Cabinet to perform medical necessity reviews. Providers are only reimbursed for medically necessary services. KRS 205.560(2) directs that reimbursements to hospitals for medically necessary services are relative to the cost of providing the care.

The plan also addresses reimbursement for care provided at what the Cabinet determines to be an inappropriate level. When adopting the plan, the Cabinet was required to choose between two options concerning the methods and standards used to determine rates for payment and inpatient hospital services. The relevant part of the plan, Section 4.19(a) of Title XIX of the Social Security Act Medical Assistance Program, reads as follows:

4.19 Payment for Services

(a) The Medicaid agency meets the requirements of 42 C.F.R. Part 447, Subpart C, and sections 1902(a)(13) and 1923 of the Act[6] with respect to payment for inpatient hospital services.

Attachment 4.19-A describes the methods and standards used to determine rates for payment and inpatient hospital services.

1. Inappropriate level of care days are covered and are paid under the State plan at lower rates than other inpatient hospital services, reflecting the level of care actually received, in a manner consistent with section 1861(v)(1)(G) of the Act.

2. **Inappropriate level of care days are not covered**

42 C.F.R. § 447.252 1902(a)(13) (emphasis added). States are given the option of checking one of the two options; the Cabinet checked the second of the two options, printed in bold.

Accordingly, two options were provided to the Cabinet with respect to inappropriate level of care days and the Cabinet, in creating the plan, chose not to cover or reimburse providers for days on which an inappropriate level of care was provided. The Cabinet argues that it therefore had no authority to pay for services provided at the inpatient level of care when those services should have been provided at the outpatient level of care. OMHS responds that this section only excludes coverage of inpatient services which would otherwise constitute post-hospital extended care, like those services provided by a skilled nursing facility, when the patient cannot be placed in such a lower level of care facility.

2. United States Code.

3. Kentucky Revised Statutes.

4. Code of Federal Regulations.

5. Kentucky Administrative Regulations.

6. This is reference is to the Social Security Act, 42 U.S.C. Chapter 7.

We agree with OMHS that medically necessary outpatient care is not to be treated the same as medically unnecessary inpatient care. The Cabinet established in the administrative appeals process that the testing and services provided to Patient 2 were medically necessary; only the inpatient admission itself was unnecessary. OMHS, therefore, is being forced to absorb the costs of medically necessary treatment it provided to a Medicaid beneficiary simply because the services were provided on an inpatient basis rather than an outpatient basis. We find this inappropriate.

Section 4.19 of the plan specifically refers to 42 C.F.R. Part 447, Subpart C, which is entitled "Payment for Inpatient Hospital and Long-Term Care Facility Services." An entirely separate section, 42 C.F.R. Part 447, Subpart F, entitled "Payment Methods for Other Institutional and Noninstitutional Services", addresses payment for outpatient care.[7] In fact, Section 4.19 of the plan does not mention outpatient services at all. 42 C.F.R. § 447.253(b)(1)(ii)(B), also housed within Subpart C, provides,

> [w]ith respect to inpatient hospital services ... [i]f a State elects in its State plan to cover **inappropriate level of care services (that is, services furnished to hospital inpatients who require a lower covered level of care such as skilled nursing or intermediate care services)** under conditions similar to those described in section 1861(v)(1)(G) of the Act, the methods and standards used to determine payment rates must specify that the payments for this type of care must be made at rates lower than those for inpatient hospital level of care services, reflecting the level of care actually re-

ceived, in a manner consistent with section 1861(v)(1)(G) of the Act[.]

(emphasis added). The federal regulations that provide for the state's options in choosing a plan establish that "inappropriate level of care services," as used in Section 4.12 of Kentucky's plan, refers to services provided on an inpatient basis that should have been provided by a skilled nursing or intermediate care facility. It does not apply to services that should have been provided on an outpatient basis.

Next, the Cabinet argues that inpatient care, when outpatient care was all that was necessary, does not fall under the regulatory definition of "medically necessary." The definition of medical necessity, contained in 907 KAR 3:130 § 2(1), states:

> The determination of whether a covered benefit or service is medically necessary shall:
>
> (a) Be based on an individualized assessment of the recipient's medical needs; and
>
> (b) Comply with the requirements established in this paragraph. To be medically necessary or a medical necessity, a covered benefit **shall be:**
>
> . . . .
>
> (2) **Appropriate in terms of the service, amount, scope, and duration** based on generally-accepted standards of good medical practice
>
> . . . .
>
> (4) **Provided in the most appropriate location,** with regard to generally-accepted standards of good medical practice, where the service may, for practical purposes, be safely and effectively provided[.]

(emphasis added). We find this argument unpersuasive. The services provided, including testing and lab studies, have al-

---

7. *See* 42 C.F.R. § 447.321(a).

ready been found to be medically appropriate. In addition, those services were provided in the appropriate location: a hospital emergency room. The fact that Patient 2 was admitted as an inpatient does not render the services provided to him medically unnecessary as that term is defined for purposes of Medicaid reimbursement.

For the above reasons, the opinion and order of the Franklin Circuit Court is affirmed.

ALL CONCUR.