RENDERED: AUGUST 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1246-MR

SECRETARY OF THE EDUCATION
& LABOR CABINET,
COMMONWEALTH OF KENTUCKY                                    APPELLANT


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE PHILLIP J. SHEPHERD, JUDGE
                        ACTION NO. 20-CI-00645


STERETT CRANE AND RIGGING,
LLC AND KENTUCKY
OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION                                    APPELLEES


OPINION
AFFIRMING IN PART
AND REVERSING AND
REMANDING IN
PART

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

COMBS, JUDGE: Appellant, The Secretary of the Education and Labor Cabinet

(the Labor Cabinet), appeals an order of the Franklin Circuit Court entered on

September 19, 2023. The circuit court affirmed portions of a final administrative

decision and order of the Kentucky Occupational Safety and Health Review Commission (the Commission) and reversed others. On appeal, The Labor Cabinet contends that the court erred by reversing the Commission's decision with respect to: (1) its interpretation of a federal regulation requiring participation of an assembly/disassembly director at certain work sites and (2) a separate federal regulation governing workplace injury report forms. After our review, we reverse in part (as to the assembly/disassembly director) and affirm in part (as to injury reporting forms).

On August 23, 2017, the Labor Cabinet (through the Department of Workplace Standards) received a referral from the Shepherdsville Fire Department. The referral pertained to personal injuries sustained by three construction workers as they prepared a hydraulic mobile crane for use in the expansion of an overpass on Old Preston Highway in Shepherdsville. As a result of the incident, two of the construction workers were hospitalized. After an investigation, the Labor Cabinet's safety compliance officer proposed citing Sterett Crane & Rigging, LLC, (Sterett Crane) for violating a number of workplace safety standards. These violations included: failure to conduct necessary inspections of equipment; failure to remove damaged equipment (later amended to failure to provide a safe workplace by replacing worn equipment); failure to have a participating assembly/disassembly director on site; and failure to have a signal person on site.

These violations were all categorized as serious, and Sterett Crane was to be assessed penalties totaling $19,600.00. The safety compliance officer also recommended that Sterett Crane be cited for its failure to post a hand-signal chart and its failure to complete injury report forms properly. For these violations, an additional penalty of $1,950.00 was proposed. Sterett Crane contested the proposals.

Following an administrative hearing conducted in January 2019, a hearing officer recommended penalties for Sterett Crane's failure to conduct necessary inspections; failure to provide a safe workplace by replacing worn equipment; and failure to post a hand-signal chart. Both parties filed petitions for review with the Commission.

The Commission reviewed the issues and rendered a final order. It concluded that Sterett Crane violated safety standards by failing to conduct necessary inspections of equipment; failing to provide a safe workplace by replacing worn equipment; failing to ensure participation of an assembly/disassembly director on site; failing to post a hand-signal chart; and failing to complete injury report forms properly. It declined to issue a citation for failure to post a signal person on site. The Commission imposed penalties totaling $16,650.00. Sterett Crane accepted the Commission's decision with respect to its

-3-

failure to post a hand-signal chart. However, pursuant to the provisions of KRS[1] 338.031, it filed an appeal to the Franklin Circuit Court with respect to the remainder of the decision.

In its order entered September 19, 2023, the circuit court affirmed the Commission's decision with respect to the failure of Sterett Crane to conduct the necessary inspections of equipment and to provide a safe workplace by replacing worn equipment. It also affirmed the Commission's penalties of $9800.00 for these violations. However, the circuit court reversed the Commission's decision with respect to the failure of Sterett Crane to post an active assembly/disassembly director on site and to file proper injury report forms. Consequently, it vacated the penalties imposed with respect to these alleged violations. The Labor Cabinet has appealed the reversal of those two issues by the circuit court.

On review, a court may reverse an administrative agency's decision only where the agency acted "outside the scope of its authority, if the agency applied an incorrect rule of law, or if the decision itself is not supported by substantial evidence on the record." *Dep't of Labor v. Morel Const. Co., Inc.*, 359 S.W.3d 438, 442 (Ky. App. 2011). Questions of fact resolved by the administrative decision are reviewed to determine whether evidence before the agency "has sufficient probative value to induce conviction in the mind of a

---

[1] Kentucky Revised Statutes.

-4-

reasonable person." *Bowling v. Natural Res. & Envtl. Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citation omitted). We review questions of law *de novo* and afford no deference to the administrative agency's interpretation. *Morel Const. Co.*, 359 S.W.3d at 442.

Title 29 § 1926.1400 of the Code of Federal Regulations (CFR) (also known as the Occupational Safety and Health Act -- or OSHA) governs federal workplace safety issues relevant to "power-operated equipment, when used in construction, that can hoist, lower and horizontally move a suspended load." The parties agree that the provision applies to mobile cranes like the ones owned by Sterett Crane and provided for use at the Shepherdsville jobsite.

Provisions of Kentucky's Occupational Safety and Health Act (OSHA), KRS Chapter 338, are patterned after their federal counterpart and are interpreted consistently with federal law. *David Gaines Roofing, LLC v. Kentucky Occupational Safety & Health Review Comm'n*, 344 S.W.3d 145 (Ky. App. 2011). In order to establish a safety violation, the Labor Cabinet must prove the following elements by a preponderance of the evidence: (1) the applicability of the standard, (2) the employer's noncompliance with the terms of the standard, (3) employee access to the violative condition, and (4) the employer's actual or constructive knowledge of the violation. *Id.* at 148 (citing *N & N Contractors, Inc. v.*

*Occupational Safety & Health Review Comm'n*, 255 F.3d 122, 126 (4th Cir. 2001)).

29 CFR § 1926.1404(a)(1) requires that assembly/disassembly of cranes be "directed by a person who meets the criteria for both a competent person and a qualified person, or by a competent person who is assisted by one or more qualified persons." A "competent person" means one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them. 29 CFR § 1926.1401. A "qualified person" means a person who, by possession of a recognized degree, certificate, or professional standing, or who by extensive knowledge, training, and experience, successfully demonstrates the ability to solve problems relating to the subject matter, the work, or the project. *Id.* "Assembly/disassembly director" means an individual who meets these requirements regardless of the person's formal job title or the designation of the person as management or non-management personnel. *Id.* The assembly/disassembly director must understand applicable assembly/disassembly procedures specific to each crane to be readied for service. 29 CFR § 1926.1404(b). Before commencing assembly/disassembly operations, the assembly/disassembly director must ensure that the crew members

understand: their tasks; the hazards associated with their tasks; and the hazardous positions/locations that they need to avoid. 29 CFR § 1926.1404(d)(1)(i), (ii), (iii).

The following specific details are helpful to an understanding of the issues on appeal. Sterett Crane leases to its customers cranes and rigs of various types and sizes. It also supplies personnel necessary for the preparation of the cranes for operation on the construction site. On August 1, 2017, Sterett Crane agreed to lease two cranes to Murphy & Daniel, LLC: a 650-ton capacity crane manufactured by Liebherr and a 500-ton capacity crane also manufactured by Liebherr. The cranes were to be used to lift and set five steel girder sections of highway spanning a CSX railway line. In addition to the cranes, Sterett Crane supplied necessary personnel and arranged the shipment of counter-weight stabilizers and outrigger pads used together to prevent the cranes from tipping and digging into the ground while in operation.

On August 22, 2017, the two cranes and the counter-weight stabilizers arrived at the job site. The larger capacity crane was readied for service without incident. The following day, four of Sterett Crane's employees held a job hazard meeting in which they discussed the work that lay ahead. A fifth Sterett Crane employee, a mechanic, was present but was not involved in the incident. An assembly/disassembly director was not designated at this meeting as it was not

Sterett Crane's policy to appoint such a person in connection with the Liebherr mobile cranes that it supplied to the job site on this occasion.

At the time of the incident, the smaller capacity crane was situated on suitable ground and had been adequately stabilized with its outriggers and counter-weight stabilizers. One employee was in the crane's cab hoisting a TY frame to either side of the crane's deck. The TY frame, also called a TY Guy, attaches to the crane's boom and significantly increases lifting capacity. It consists of two sections that arrive at the site separated from the crane. The crane lifts each TY Guy and places it onto its deck. The boom is lowered, and the TY Guy is locked into place.

The other three Sterett Crane employees were on the crane's deck disconnecting slings and setting pins. However, before the pins had been set, the crane-operator "started to cable up the boom." One of the TY Guys broke loose, shifted, and fell. The three employees working outside the cab were injured -- two of them severely. Following his investigation, the safety compliance officer found that Sterett Crane's failure to designate an assembly/disassembly director may have contributed to the confusion that surrounded the preparation of the crane for service and that this confusion may have been one of the causes of the accident.

On appeal, the Labor Cabinet first contends that the circuit court erred by concluding that the Commission had been incorrect in determining that the

provisions of 29 CFR § 1926.1404(a) (requiring the presence of an assembly/disassembly director) applied under the circumstances. We agree with the Labor Cabinet.

Upon its review, the circuit court was persuaded that participation of an assembly/disassembly director was not required at the Shepherdsville site because readying the crane was "not particularly complex." Instead, it was convinced by the hearing officer's recommended conclusion that the regulation's requirement for someone to fill the role of assembly/disassembly director only applied to "more complex lattice boom and tower cranes, which require a crew of several men to assemble." While the hearing officer acknowledged that provisions of 29 CFR § 1926.1400 are "arguably applicable to this crane," he believed that where a crane could be set up by two employees, "there is obviously no need to appoint an [assembly/disassembly director.]" The Commission disagreed, but the circuit court agreed with the hearing officer rather than the Commission.

In the construction and interpretation of administrative regulations, the same rules apply that would be applicable to statutory construction and interpretation. *Revenue Cabinet, Commonwealth v. Gaba*, 885 S.W.2d 706 (Ky. App. 1994) (citing *Revenue Cabinet v. Joy Technologies, Inc.*, 838 S.W.2d 406 (Ky. App. 1992)). The most commonly stated rule in statutory interpretation is that the "plain meaning" of its terms controls. *Alliance for Kentucky's Future, Inc.*

*v. Environmental and Public Protection Cabinet*, 310 S.W.3d 681 (Ky. App. 2008). Kentucky courts steadfastly adhere to the plain-meaning rule "unless to do so would constitute an absurd result." *Executive Branch Ethics Commission v. Stephens*, 92 S.W.3d 69, 73 (Ky. 2002).

While provisions of 29 CFR § 1926.1404 require that the "assembly/disassembly" of a mobile crane be managed by an assembly/disassembly director, the terms "assembly/disassembly" are not effectively defined in the regulation. In fact, "assembly/disassembly" is described only as "the assembly and/or disassembly of equipment covered under this standard." 29 CFR § 1926.1401. Again, the parties agree that the crane being prepared for service on the day of the incident is "equipment covered under this standard."

In order to decide whether the crane was being "assembled" at the time the injuries were sustained, we have examined the preliminary activities performed on site. Sterett Crane describes the specific tasks undertaken to ready the crane for service to include placement of counterweights; extension of stabilizers; attachment of the TY Guys to the boom with a hammer and other tools; installation of pins; and connection and disconnection of slings. In its brief, Sterett Crane characterizes these activities as "assembly." Given the ordinary and plain meaning of the term "assembly," we conclude that the regulation encompasses the

-10-

activities undertaken by Sterett Crane's employees with respect to the structural components attached to the crane.

We also conclude that the fact that preparation of the crane does not require a large crew is irrelevant. The provision expressly envisions a situation where assembly/disassembly is being performed by *a single individual*. In that event, the individual must meet the criteria for both a competent person and a qualified person and is considered to be the assembly/disassembly director. 29 CFR § 1926.1404(a)(2).

Additionally, we agree with the Commission's criticism of Sterett Cane's reliance upon an excerpt from a United States Department of Labor publication. OSHA, *The Small Entity Compliance Guide for Final Rule for Cranes and Derricks in Construction* (2014), indicates that "[a]ccidents during the assembly and disassembly of lattice boom and tower cranes are one of the major causes of crane-related fatalities." Additionally, it states that "[t]hese sections are designed to prevent such accidents by requiring safe assembly/disassembly procedures for lattice boom and tower cranes." Finally, the Guide observes that "[h]ydraulic boom cranes are generally not assembled on site, but these sections contain some provisions, such as the requirement (section 1404(q)) for proper setting of outriggers and stabilizers, that apply to cranes with hydraulic booms."

Despite Sterett Crane's claim to the contrary, the language used in the Guide does not limit the applicability of the safety standards to lattice boom or tower cranes. Moreover, while its language reflects that "[h]ydraulic boom cranes are generally not assembled on site," we are not persuaded that it intends to exclude hydraulic boom cranes -- *as a class* -- from the standard's scope. We agree with the Commission that the language used in the guide would not lead a reasonable entity to believe that an assembly/disassembly director was not necessary to the preliminary work undertaken on the crane on the day of the accident.

Notably, the Labor Department's publication expressly advises readers that it merely "provides a general overview of a particular standards-related topic." Additionally, it specifically warns as follows:

> This publication does not alter or determine compliance responsibilities which are set forth in OSHA standards and the Occupational Safety and Health Act. Moreover, because interpretations and enforcement policy may change over time, for additional guidance on OSHA compliance requirements, the reader should consult current administrative interpretations and decisions by the Occupational Safety and Health Review Commission and the courts.

Finally, we disagree with Sterett Crane's contention that the terms of an OSHA interpretation letter indicate that the preliminary work undertaken at its crane constituted merely "set up" and not "assembly." An OSHA letter dated

October 15, 2014, that was made available to the public, provided that "assembly" does not generally include every activity that requires a bolt or pin to connect outrigger pads or swing away crane extensions.  The letter observes that the "complexity of preparing and putting together sections and/or parts of a crane at a construction site may vary depending on the model of the crane."  It noted that some cranes arrive at a worksite fully assembled and do not require "assembly"; that truck cranes (as distinguished from mobile cranes) "require relatively simple assembly of the boom"; and that other cranes require "complex assembly such as adding counterweights or attachments. . . ."  OSHA contrasts these preliminary "*assembly*" tasks with "set-up" tasks that involve deployment of outriggers; leveling the equipment; and unfolding and pinning the boom or swing-away extension.

Sterett Crane claims that the "fact that the [crane] required the installation of counterweights and the TY Guy does not move the actions related to configuring the [crane] from set-up to assembly."  It argues that the **complexity** of the preparation needed to ready the crane for operation governs the distinction.

However, the language of the interpretation letter does not support this position.  On the contrary, it specifically characterizes the positioning of counterweights and attachments as "complex assembly."  It is undisputed that the preliminary tasks being undertaken at the time of the injuries included the

positioning of counterweights and attaching TY Frames to the crane to enhance its capacity. According to OSHA, these tasks constitute "assembly" and require the participation of an assembly/disassembly director. We are persuaded that the circuit court erred by concluding that the provision did not apply.

As if in anticipation of this conclusion, Sterett Crane nevertheless has argued that the circuit court's decision must be affirmed. It contends that despite proof of the applicability of the safety standard, Sterett Crane's noncompliance with that standard, and the impact of the safety violation on its employees' welfare, the Labor Cabinet failed to prove Sterett Crane's actual or constructive knowledge of the "violative condition." Sterett Crane claims that it did not know -- nor through reasonable diligence could it have known -- that it was in violation of the safety standard requiring an active assembly/disassembly director. We disagree.

During the administrative hearing, the Labor Cabinet's Compliance Safety Officer testified that a Sterett Crane foreman indicated that he (the Sterett Crane foreman) had been concerned that the company did not designate an assembly/disassembly director for assembly of these Leibherr cranes. However, his request for one had been denied.

Sterett Crane was clearly aware that it did not require its employees to enlist the participation of an assembly/disassembly director for preparation of Liebherr cranes at job sites. The evidence also showed that it was aware of a

specific safety concern in connection with its policy **not** to designate one. Although the Labor Cabinet must prove that Sterett Crane was aware of the circumstances, it does not have to prove that Sterett Crane had a correct understanding of its obligation to comply with the safety standard. *See David Gaines Roofing*, 344 S.W.3d at 148 (quoting *N & N Contractors, Inc. v. Occupational Safety & Health Review Comm'n*, 255 F.3d 122, 127 (4th Cir. 2001)). Sterett Crane contends that its erroneous view of the applicability of the safety standard prevents enforcement of the standard. That argument is untenable as a matter of law and of logic.

Next, the Labor Cabinet argues that the circuit court erred by concluding that Sterett Crane substantially complied with provisions of 29 CFR §1904.29, pertaining to the accurate and timely filing of workplace injury incident report forms. We disagree.

Pursuant to the provisions of 29 CFR § 1904.29(a), covered employers must record workplace injuries and illnesses on a set of three standardized forms -- Form 301 to report individual incidents; Form 300 to record all work-related injuries on a log; and Form 300A to prepare a quarterly summary derived from the log. An equivalent workplace injury report may be submitted in lieu of the Form 301. *Id.* The Commission identified several deficiencies in the workplace injury incident report forms submitted by Sterett Crane. According to

-15-

the Labor Cabinet, the forms did not provide case numbers; adequate descriptions of the injuries sustained; or adequate details concerning how the injuries occurred.

While the hearing officer agreed that the forms omitted some information, he recommended finding that Sterett Crane substantially complied with its reporting obligations. The Commission rejected this recommendation. It determined that the information provided by Sterett Crane "materially impaired the understandability of the nature of hazards, injuries and illnesses in the workplace" and concluded that the employer did not "substantially comply with its record creation and retention duties by providing information [via email] to a compliance officer."

With respect to one employee's injuries, "Employee A," Sterett Crane submitted an equivalent form that it used to meet the mandatory reporting requirements established in our workers' compensation statutes. Employee A was not hospitalized. His injury was described on the workers' compensation form prepared by a Sterett Crane human resources manager as a head injury that was initially treated by emergency care and that it had occurred while the employee was building a crane. Among other information, the form provided Employee A's name and address, date of birth, sex, social security number, and hire date; the employer's federal identification number; and the time and location of the incident. The form described the crane being built and indicated that Employee A was

"[p]utting a Superlift on deck" when the accident occurred. The form explained that the employer had provided the safeguards or equipment being used by the employee at the time of the injury. It listed witnesses to the accident and gave the name, title, address, and phone number of Sterett Crane's human resources manager.

Sterett Crane's OSHA Form 300 recorded Employee A's injury a second time. It listed the employee's job title and the date and location of his injury -- describing it as a "bump in the head." Sterett Crane indicated that this employee had not missed work because of his injury. Sterett Crane's OSHA Form 300A recorded Employee A's injury a third time.

With respect to the injuries of the second employee, "Employee B," Sterett Crane submitted an equivalent form used to meet our workers' compensation requirements; an OSHA Form 301; an OSHA Form 300; and an OSHA Form 300A. The employee's injuries were described on the OSHA Form 301 as "Back, ankle" requiring emergency care and hospitalization at a University of Louisville facility for more than 24 hours. The form indicated that the injuries sustained were directly caused by a Y Guide. It indicated that while Employee B was standing on a crane deck, building the crane, a "[l]oad still secured when lift attempted resulted in employee being struck." The OSHA form included a case number derived from its OSHA Log; the date and time of the injury; and the

employee's name, address, date of birth, hire date, and sex. Every space for entry of required information was completed by Sterett Crane's human resources manager, who provided her name, title, and phone number.

The workers' compensation form provided by Sterett Crane (second recording) gave Employee B's name and address, date of birth, sex, social security number, and hire date; the employer's federal identification number; and time and location of the incident. It listed witnesses to the accident and gave the name, title, address, and phone number of Sterett Crane's human resources manager. The form described the crane being built and indicated that Employee B was "[p]utting a Superlift on deck" when the accident occurred. The form explained that the employer had provided the safeguards or equipment being used by the employee at the time of the injury. Finally, it listed witnesses to the accident and gave the name, title, address, and phone number of Sterett's human resources manager.

Sterett Crane's OSHA Form 300 recorded Employee B's injury a third time. It listed the employee's job title, the date and location of his injury, describing it as a "Broken ankle, Back injury." Sterett Crane indicated that this employee required time away from work because of his injury. Sterett Crane's OSHA Form 300A recorded Employee B's injuries a fourth time.

With respect to the third employee's injuries, "Employee C," Sterett Crane submitted an equivalent form that it used to meet the mandatory reporting

requirements established in our workers' compensation statutes. Employee C's injuries were described by Sterett Crane's human resources manager as affecting his arm, torso, and hip and indicated that his injuries were initially treated by emergency care and required hospitalization for more than 24 hours at University of Louisville Hospital. It explained that the injuries had occurred while Employee C was building a crane. Among other information, the form provided Employee C's name and address, date of birth, sex, social security number, and hire date; the employer's federal identification number; and time and location of the incident. The form described the crane being built and indicated that Employee C was "[p]utting a Superlift on deck" when the accident occurred. The form explained that the employer had provided the safeguards or equipment being used by the employee at the time of the injury. Again, finally, it listed witnesses to the accident and gave the name, title, address, and phone number of Sterett Crane's human resources manager.

Sterett Crane's OSHA Form 300 recorded Employee C's injury a second time. It listed the employee's job title, the date and location of his injury, describing it as a "broken arm, chest laceration, and bruised hip." Sterett Crane indicated that this employee had missed work because of his injury. Sterett Crane's OSHA Form 300A recorded Employee C's injury a third time.

In an email sent on the evening of the incident, Sterett Crane notified the Labor Cabinet of the date and location of its employees when the injuries were sustained. It indicated that two of its three employees remained hospitalized as a result of their injuries. Sterett Crane indicated its willingness to provide any additional information required and provided a contact number. A subsequent email sent later in the evening provided an update with respect to each employee's specific injuries.

The Labor Cabinet's safety compliance officer contended that the information provided for Employee A failed to identify his injury; failed to provide a sequence of events or identify objects that directly caused his injury; and failed to provide the case number linking his injury to the injury reported under his name on the OSHA Form 300. He contended that the information submitted in relation to Employee B failed to identify "the part of the body that was affected"; failed to provide "the case number from the log . . . type of injury or illness. . . and description."

In his recommended order, the hearing officer observed that OSHA reporting regulations were designed to collect information about workplace injuries and fatalities relevant to its study of trends in the workplace. He found that the forms Sterett Crane submitted for each employee had sufficiently fulfilled their

purposes. He concluded that Sterett Crane substantially complied with the reporting requirement and did not violate the standard. We agree.

The Commission's criticism of how Sterett Crane reported its employees' injuries on government forms is not well founded. In the multitude of forms submitted, Sterett Crane provided information necessary to allow the agency to ascertain the nature and extent of the injuries its employee's sustained. The circuit court was correct in concluding that the submissions adequately satisfy the reporting requirements of 29 CFR § 1904.29(a).

To recapitulate, we affirm the circuit court with respect to the reporting requirement for injuries but reverse as to its determination that the participation of an assembly/disassembly director was not required. We agree with the Labor Cabinet's interpretation that OSHA would indeed apply to require an assembly/disassembly director. Therefore, we remand this case to the Franklin Circuit Court for entry of an order consistent with our holding in order that any penalties thus affected can be adjusted accordingly.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James Leif Sanders
Frankfort, Kentucky

BRIEF FOR APPELLEE STERETT
CRANE AND RIGGING, LLC:

John David Meyer
Owensboro, Kentucky

BRIEF FOR APPELLEE THE
KENTUCKY OCCUPATIONAL
SAFETY & HEALTH REVIEW
COMMISSION:

E.H. "Chip" Smith, IV
Frankfort, Kentucky